SHORT RECORD
NO. 18-2024
FILED 11/7/18

No. █████████

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

FLORENCE MUSSAT, M.D., S.C.,

Plaintiff,

v.

IQVIA INC., and JOHN DOES 1-10,

Defendants.

Appeal from the United States District Court
for the Northern District of Illinois
Case No. 17-C-8841
The Honorable Virginia M. Kendall District Judge

**PETITION FOR LEAVE TO APPEAL FROM ORDER DENYING
CLASS CERTIFICATION, PURSUANT TO FED. R. CIV. P. 23(f)**

Daniel A. Edelman (Counsel of Record)
Heather Kolbus
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
courtecl@edcombs.com
*Counsel for Plaintiff-Appellants*

Curtis C. Warner
WARNER LAW FIRM, LLC
350 S. Northwest Hwy., Ste. 300
Park Ridge, IL 60608
(847) 701-5290
cwarner@warner.legal
*Co-counsel for Plaintiff-Appellant*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ...................................................................................................1

RELEVANT FACTS .............................................................................................1

REASONS WHY THE APPEAL SHOULD BE ALLOWED ....................................1

QUESTIONS PRESENTED ...................................................................................3

RELIEF REQUESTED ..........................................................................................3

WHY THE APPEAL IS AUTHORIZED ................................................................4

STANDARD OF REVIEW .....................................................................................4

WHY *BRISTOL-MYERS* DOES NOT APPLY TO FEDERAL QUESTION CLASS ACTIONS

IN FEDERAL COURT ..........................................................................................5

      I.      HISTORICALLY, NATIONAL CLASSES WERE PERMITTED AS LONG AS PERSONAL JURISDICTION EXISTED WITH RESPECT TO THE NAMED PLAINTIFF.................................................................................................5

      II.     THE DISTRICT COURT ERRED IN APPLYING *BRISTOL-MYERS* IN THE CLASS ACTION CONTEXT ...............................................................9

      III.    AS MOST OTHER COURTS HAVE HELD, DUE PROCESS DOES NOT CALL FOR MINIMUM CONTACTS BETWEEN EACH CLASS MEMBER AND THE FORUM ...........................................................................10

      IV.    THE SCOPE OF A FEDERAL QUESTION CLASS ACTION IN FEDERAL COURT IS GOVERNED SOLELY BY RULE 23 AND NOT BY DUE PROCESS, DIRECTLY OR THROUGH RULE 4 ...............................................13

CONCLUSION ................................................................................................................16

CERTIFICATE OF SERVICE ......................................................................................17

STATEMENT PURSUANT TO CIRCUIT RULE 30 .................................................18

TYPE VOLUME CERTIFICATION ............................................................................19

INDEX TO SHORT APPENDIX .................................................................................20

SHORT APPENDIX ..................................................................................... APP 1 – 60

# TABLE OF AUTHORITIES

**Cases**

*Beaton v. SpeedyPC Software*,
  No. 18-1010, 2018 WL 5623931 (7th Cir., Oct. 31, 2018) ........................................................ 4

*Becker v. HBN Media, Inc.*,
  314 F.Supp.3d 1342 (S.D.Fla. 2018) .................................................................................... 2

*Blair v. Equifax Check Services, Inc.*,
  181 F.3d 832 (7th Cir. 1999) ................................................................................................ 4

*Brady v. Sullivan*,
  893 F.2d 872 (7th Cir. 1989) ................................................................................................ 8

*Braver v. Northstar Alarm Services, LLC,*
  5:17cv00383, __ WL __ (W.D.Okla. Oct. 15, 2018) ............................................................ 2

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) .............................................................................................. 8

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) ............................................................................................... 1, 9, 10

*Brotz v. Simm Associates, Inc.*,
  17cv1603, 2018 WL 4963692 (M.D.Fla. Oct. 15, 2018) ...................................................... 3

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................................... 5, 6, 8, 14, 16

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.,*
  17cv2161, 2018 WL 1377608 (E.D.La. Mar. 19, 2018) ............................................... 2, 5, 14

*Chernus v. Logitech, Inc.*,
  17cv673, 2018 WL 1981481 (D.N.J. April 27, 2018*)* ................................................ 2, 5, 14

*Day v. Air Methods. Corp.*,
  5:17cv183, 2017 WL 4781863 (E.D.Ky. Oct. 23, 2017) ............................................... 3

*Dennis v. IDT Corp.*,
  18cv2302, 2018 WL 5631102 (N.D.Ga. Oct. 18, 2018) ............................................... 3

*Driver v. AppleIllinois, LLC*,
   739 F.3d 1073 (7th Cir. 2014) ...................................................................... 4

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   17cv564, 2017 WL 4224723 (N.D.Cal. Sept. 22, 2017) .................................... 2, 11

*Fitzpatrick v. Law Sols. Chicago, LLC*,
   584 B.R. 203 (E.D.Tenn. 2018) ................................................................... 13, 14

*Haj v. Pfizer Inc.*,
   17cv6730, 2018 WL 3707561 (N.D.Ill. Aug. 3, 2018) ...................................... 3, 11

*Incredible Techs., Inc. v. Virtual Techs., I,*
   *nc.*, 400 F.3d 1007 (7th Cir. 2005) ................................................................... 4

*In re Bemis Co.,*
   279 F.3d 419 (7th Cir. 2002) ........................................................................... 4

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   MDL 09-2047, 2017 WL 5971622 (E.D.La. Nov. 30, 2017) ............................. 2, 11

*In re Morning Song Bird Food Litig.,*
   12cv01592, 2018 WL 1382746 (S.D.Cal. Mar. 19, 2018) .................................... 2

*KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*,
   725 F.3d 718 (7th Cir. 2013) .......................................................................... 13

*Knotts v. Nissan North America, Inc.,*
   17cv05049, 2018 WL 4922360 (D.Minn. Oct. 10, 2018) ...................................... 3

*Lee v. Branch Banking & Trust Co.,*
   18cv21876, 2018 WL 5633995 (S.D.Fla. Oct. 31, 2018) ...................................... 3

*Marsh v. Kitchen*,
   480 F.2d 1270 (2nd Cir. 1973) ....................................................................... 14

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ....................................................................................... 7

*Matz v. Household Intern. Tax Reduction Inv. Plan*,
   687 F.3d 824 (7th Cir. 2017) ........................................................................... 4

*McDonnell v. Nature's Way Products, LLC,*
    16cv5011, 2017 WL 4864910 (N.D.Ill. Oct. 26, 2017) ............................................................ 3

*Messner v. Northshore Univ. HealthSystem.,*
    669 F.3d 802 (7th Cir. 2013) ........................................................................................ 4

*Molock v. Whole Foods Market, Inc.,*
    16cv2483, 2018 WL 1342470 (D.D.C. Mar. 15, 2018) ........................................................ 2

*Morgan v. U.S. Xpress, Inc.,*
    3:17cv00085, 2018 WL 3580775 (W.D.Va. July 25, 2018) ................................................. 2

*Muir v. Nature's Bounty (DE), Inc.,*
    15cv9835, 2018 WL 3647115 (N.D.Ill. 2018) ..................................................................... 9

*Phillips Petroleum v. Shutts,*
    472 U.S. 797 (1985) ....................................................................................................... 7

*Practice Mgmt. Support Services, Inc. v. Cirque Du Soleil, Inc.,*
    301 F.Supp. 3d 840 (N.D.Ill. 2018) ................................................................................. 3

*Robinson Engineering Co. Pension Plan and Trust v. George,*
    223 F.3d 445 (7th Cir. 2000) ......................................................................................... 11

*Sanchez v. Launch Technical Workforce Solutions, LLC,*
    297 F.Supp.3d 1360 (N.D.Ga. 2018) .......................................................................... 2, 10

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ............................................................................................. 14, 15, 16

*Shell v. Shell Oil Co.,*
    165 F. Supp. 2d 1096 (C.D. Cal. 2001) ............................................................................. 14

*Sloan v. General Motors LLC,*
    287 F.Supp.3d 840 (N.D. Cal. 2018) ............................................................................... 11

*Sobol v. Imprimis Pharm.,*
    16cv14339, 2018 WL 2424009 (E.D.Mich. May 29, 2018) ................................................. 3

*Swamy v. Title Source, Inc.,*
    17cv01175, 2017 WL 5196780 (N.D.Cal. Nov. 10, 2017) ................................................. 2, 12

*Tickling Keys, Inc. v. Transamerica Financial Advisors, Inc.*,
305 F.Supp.3d 1342 (M.D.Fla. 2018) ................................................................ 2

*United States v. Botefuhr*,
309 F.3d 1263 (10th Cir. 2002)......................................................................... 11

*Weinberger v. Salfi*,
422 U.S. 749 (1975) ............................................................................................ 7

*Weisheit v. Rosenberg & Assocs., LLC,*
17cv823, 2018 WL 1942196 (D.Md. April 25, 2018) .................................... 2

**Statutes**

28 U.S.C. §2072 ................................................................................................ 15

29 U.S.C. §§202, 207(a) .................................................................................. 12

47 U.S.C. §227 ................................................................................................... 1

§2072(b) ............................................................................................................ 15

**Rules**

Fed. Rules Civ. Proc. 18 ................................................................................... 15

Fed.R.Civ.P. 23 .......................................................................................... 5, 6, 8

Fed.R.Civ.P. 23(f) ......................................................................................... 1, 4

Rule 23(b)(2) ...................................................................................................... 5

Rule 23(b)(3) ...................................................................................................... 5

## INTRODUCTION

Plaintiff-petitioner Florence Mussat, M.D., S.C. respectfully requests leave, pursuant to Fed.R.Civ.P. 23(f), to appeal an October 26, 2018 order of the United States District Court for the Northern District of Illinois (Kendall, J.), granting defendant IQVIA, Inc.'s motion to strike the portion of plaintiff's class definition that asserted claims on behalf of non-Illinois persons. [Dkt. 58] (<u>Appendix A</u>).

## RELEVANT FACTS

This is a "junk fax" class action under the Telephone Consumer Protection Act, 47 U.S.C. §227.   Plaintiff Mussat is an Illinois corporation with its headquarters in Illinois. Defendant IQVIA is a Delaware corporation with its headquarters in Pennsylvania.   Mussat alleged that IQVIA broadcast unsolicited advertisement faxes to numerous persons in Illinois and elsewhere.   Mussat received at least two such faxes and brought suit in the Northern District of Illinois on behalf of all junk fax recipients, wherever located.   (Amd.Cmplt. [Dkt. 15] <u>Appendix B</u>)

The district court held that there was a personal jurisdiction problem with including the non-Illinois class members and struck the portion of plaintiff's class definition that asserted claims on behalf of non-Illinois persons.

## REASONS WHY THE APPEAL SHOULD BE ALLOWED

The district court misapplied *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), which involved a non-class, state-law mass tort action filed in state court against a nonresident defendant on behalf of 86 California residents and 592 persons whose claims had no connection with California.   The *Bristol-Myers* court held that "minimum contacts" personal

jurisdiction requirements had to be met by the 592 non-residents and that the presence of 86 California residents did not obviate this requirement. The court below held that *Bristol-Myers* means that "due process requires the defendant be subject to specific jurisdiction not only as to the named plaintiff's claims, but also to the absent class members' claims," separately, and as those claims do not arise from IQVIA's contacts with the forum, the court did not have specific jurisdiction over IQVIA with respect to the nonresidents' claims. [Dkt. 58, p.10].

For the reasons discussed below, a majority of decisions have held *Bristol-Myers* inapplicable to a multistate federal question class action filed in federal court against a non-resident defendant by a plaintiff injured in the forum. *Morgan v. U.S. Xpress, Inc.*, 3:17cv00085, 2018 WL 3580775 (W.D.Va. July 25, 2018); *Tickling Keys, Inc. v. Transamerica Financial Advisors, Inc*., 305 F.Supp.3d 1342 (M.D.Fla. 2018); *In re Morning Song Bird Food Litig.,* 12cv01592, 2018 WL 1382746 (S.D.Cal. Mar. 19, 2018); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.,* 17cv2161, 2018 WL 1377608 (E.D.La. Mar. 19, 2018); *Molock v. Whole Foods Market, Inc.,* 16cv2483, 2018 WL 1342470 (D.D.C. Mar. 15, 2018); *Sanchez v. Launch Technical Workforce Solutions, LLC,* 297 F.Supp.3d 1360, 1365-68 (N.D.Ga. 2018); *In re Chinese-Manufactured Drywall Prods. Liab. Litig*., MDL 09-2047, 2017 WL 5971622 (E.D.La. Nov. 30, 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc*., 17cv564, 2017 WL 4224723 (N.D.Cal. Sept. 22, 2017); *Swamy v. Title Source, Inc*., 17cv01175, 2017 WL 5196780 (N.D.Cal. Nov. 10, 2017); *Weisheit v. Rosenberg & Assocs., LLC,* 17cv823, 2018 WL 1942196 (D.Md. April 25, 2018); *Chernus v. Logitech, Inc*., 17cv673, 2018 WL 1981481 (D.N.J. April 27, 2018); *Becker v. HBN Media, Inc*., 314 F.Supp.3d 1342 (S.D.Fla. 2018); *Braver v. Northstar Alarm Services*, *LLC*, 5:17cv00383, __ WL __ (W.D.Okla. Oct. 15, 2018) (<u>Appendix

C); *Dennis v. IDT Corp.*, 18cv2302, 2018 WL 5631102 (N.D.Ga. Oct. 18, 2018); *Sobol v. Imprimis Pharm.*, 16cv14339, 2018 WL 2424009 (E.D.Mich. May 29, 2018); *Brotz v. Simm Associates, Inc.*, 17cv1603, 2018 WL 4963692 (M.D.Fla. Oct. 15, 2018); *Day v. Air Methods. Corp.*, 5:17cv183, 2017 WL 4781863 (E.D.Ky. Oct. 23, 2017); *Lee v. Branch Banking & Trust Co.,* 18cv21876, 2018 WL 5633995 (S.D.Fla. Oct. 31, 2018); *Knotts v. Nissan North America, Inc.,* 17cv05049, 2018 WL 4922360 (D.Minn. Oct. 10, 2018).

District courts within the Seventh Circuit are divided, with the decision below conflicting with *Haj v. Pfizer Inc.*, 17cv6730, 2018 WL 3707561 (N.D.Ill. Aug. 3, 2018), but agreeing with *Practice Mgmt. Support Services, Inc. v. Cirque Du Soleil, Inc.,* 301 F.Supp. 3d 840 (N.D.Ill. 2018), and several others.   The seminal Northern District case finding a personal jurisdiction problem, *McDonnell v. Nature's Way Products, LLC,* 16cv5011, 2017 WL 4864910, *3-4 (N.D.Ill. Oct. 26, 2017), appears to have conflated (1) defining a class to include (a) claims arising under consumer fraud laws of other states and (b) products not purchased by the Illinois plaintiff, (2) joinder of non-Illinois named plaintiffs to provide representation for such claims, and (3) inclusion of non-Illinois class members.

## QUESTION PRESENTED

Mussat asks this Court to resolve the important issue of law of whether *Bristol-Myers* limits a multistate federal question class action filed in federal court against a non-resident defendant by a plaintiff injured in the forum.

## RELIEF REQUESTED

Mussat requests that the October 26, 2018 order be reversed.

# WHY THE APPEAL IS AUTHORIZED

Fed.R.Civ.P. 23(f) "permit(s) an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered."   This petition was filed within 14 days after October 26, 2018.

An order striking class allegations is "the functional equivalent of denying a motion to certify a case as a class action, a denial that Rule 23(f) makes appealable (at our discretion)." *In re Bemis Co.,* 279 F.3d 419, 420-21 (7th Cir. 2002).

Rule 23(f) authorizes this Court to hear an appeal of a decision that eliminates most of a class (here, 49 out of 50 states). *Matz v. Household Intern. Tax Reduction Inv. Plan*, 687 F.3d 824, 826 (7th Cir. 2017); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014).[1]

Finally, this Court holds that an interlocutory appeal of a denial of class certification under Rule 23(f) is appropriate when such an appeal may facilitate the development of the law. *Blair v. Equifax Check Services, Inc*., 181 F.3d 832, 834-835 (7th Cir. 1999).   This is such a case.

# STANDARD OF REVIEW

Although nominally class certification decisions are reviewed on an abuse of discretion standard, *Messner v. Northshore Univ. HealthSystem.*, 669 F.3d 802, 811 (7th Cir. 2013), this concept includes errors of law, *id; Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007,

---

[1] This Court recently decided *Beaton v. SpeedyPC Software*, No. 18-1010, 2018 WL 5623931, *2-3 (7th Cir., Oct. 31, 2018), a Rule 23(f) case in which it upheld certification of a nationwide class against a foreign defendant, but declined to address the defendant's *Bristol-Myers* argument, where defendant had not developed the argument below.   "Thus, we have no need to opine on this question, because it does not bear directly on our determination."

1011 (7th Cir. 2005), which is what Mussat contends the district court made.

## WHY *BRISTOL-MYERS* DOES NOT APPLY
## TO FEDERAL QUESTION CLASS ACTIONS IN FEDERAL COURT

**I.    HISTORICALLY, NATIONAL CLASSES WERE PERMITTED AS LONG AS PERSONAL JURISDICTION EXISTED WITH RESPECT TO THE NAMED PLAINTIFF**

Prior to 2017, it was generally accepted that the personal jurisdiction requirement applicable to a class action was that the named plaintiff and only the named plaintiff had to establish general or specific personal jurisdiction over the defendant. The scope of the class was controlled by Fed.R.Civ.P. 23 or the equivalent state provision. *Chernus v. Logitech, Inc., supra*, 2018 WL 1981481, *7 (D.N.J. 2018) ("[U]nnamed class members are irrelevant to the question of specific jurisdiction"); *Casso's Wellness Store & Gym,* 2018 WL 1377608 at *5 ("[I]n a putative class action, the plaintiff seeking to represent the class is the only plaintiff named in the complaint, and his claims—not the unnamed non-resident members—are relevant to the personal jurisdiction inquiry"); *Day*, 2017 WL 478186 at *2 ("[T]he inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members").

In *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), the Supreme Court held that a nationwide class was proper even though it was not filed where defendant was domiciled or had its principal place of business:

> **Nothing in Rule 23, however, limits the geographical scope of a class action that is brought in conformity with that Rule**. Since the class here was certified in accordance with Rule 23(b)(2), the limitations on class size associated with Rule 23(b)(3) actions do not apply directly. Nor is a nationwide class inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class. *Dayton Board,* 433 U.S., at 414  420. If a class action is otherwise proper, and if jurisdiction lies over the claims of

the members of the class, the fact that the class is nationwide in scope does not necessarily mean that the relief afforded the plaintiffs will be more burdensome than necessary to redress the complaining parties.

We concede the force of the Secretary's contentions that nationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on this Court's docket. It often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts in different factual contexts. For this reason, a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts. But we decline to adopt the extreme position that such a class may never be certified. ***The certification of a nationwide class, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court***. On the facts of this case we cannot conclude that the District Court in *Buffington* abused that discretion especially in light of its sensitivity to ongoing litigation of the same issue in other districts, and the determination that counsel was adequate to represent the class. (Emphasis added).

*Califano* involved actions filed against the Secretary of Health, Education, and Welfare in district courts in Hawaii and Washington state by residents of those states challenging Social Security policies.   442 U.S. at 682.   Since the "residence" of the Secretary was the District of Columbia, under the reasoning of the district court in the present case, the only place where a national class action challenging an official Government policy could be brought is in the District of Columbia.   Heretofore, no one had thought that this was required–a requirement that would unduly burden both that court and citizens residing elsewhere.

The Supreme Court has never overturned *Califano*, and the above-quoted proposition that it stands for remains in effect.

While Judge Kendall stated that *Califano* assumed that "jurisdiction lies over the claims of the members of the class," the jurisdictional requirement referred to (442 U.S. at 703-04) was that of §205(g) of the Social Security Act, which requires a "final decision" before there can be

judicial review, not personal jurisdiction:

> The Secretary concedes that the named plaintiffs have satisfied the requirements of §205(g) jurisdiction. He argues, however, that the District Courts erred in awarding relief to class members who have been subjected to recoupment but who have not sought either reconsideration of overpayment determinations or waiver of recovery. The Secretary contends that these class members have failed to obtain a "final decision" from the Secretary as required by § 205(g), as construed in *Weinberger v. Salfi*, 422 U.S. 749 (1975), and *Mathews v. Eldridge*, 424 U.S. 319 (1976).

> The relief to which the Secretary objects in this Court is the determination that he must afford class members an opportunity for a prerecoupment oral hearing. With respect to that relief, the classes certified were plainly too broad. Both the *Elliott* and the *Buffington* classes included persons who had not filed requests for reconsideration or waiver in the past and would not do so in the future. As to them, no "final decision" concerning the right to a prerecoupment hearing has been or will be made.

Six years later, the Supreme Court rejected an argument that "minimum contacts" were required between the forum state and each class member before a court could adjudicate the claims of the class members. *Phillips Petroleum v. Shutts*, 472 U.S. 797, 797 (1985). The Court held that due process allowed a state court to exercise personal jurisdiction over out-of-state absent class members, as long as they were given notice and an opportunity to opt out. The Court reasoned that the burden placed on such class members is minimal — they do not hire counsel or appear in court, they do not participate in discovery, they are not required to defend themselves and are not subject to counterclaims or cross-claims, and they are not subject to punitive remedies. *Id* at 809-10. Under *Shutts*, putative class members are not treated as if they were named parties. An absent class member is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection. *Shutts*, 472 U.S. at 810. Since involvement in litigation as a member of a class is much less burdensome than being a plaintiff, mailed notice with an opportunity to opt out

is sufficient to satisfy due process with respect to the class. *Id* at 806-09.

Judge Kendall stated that *Shutts* was not relevant because it did not analyze the exercise of personal jurisdiction over a defendant, but over the absent class members. [Dkt. 58, pp.11-12] However, the due process implications are virtually identical. *Shutts* upholds jurisdiction over absent class members because they are represented by the named plaintiff and do not have to do anything themselves. Conversely, absent class members do not subject a defendant, already in the forum for the in-state class, to significant additional litigation burdens. Unlike the personal injury plaintiffs in *Bristol-Myers*, class members do not issue discovery, file motions, require depositions, or otherwise add to the litigation burden of the defendant.

The only party who will be actively engaged in the litigation against IQVIA is Mussat — which received IQVIA's junk faxes in Illinois. There is no due process problem with allowing Mussat or other Illinois residents to sue IQVIA in Illinois federal court. Broadening the class to include non-Illinois residents does not add to IQVIA's litigation burdens. Where, as here, only federal claims are asserted, no additional legal issues are presented.

Between 1985 and 2017, no one thought that personal jurisdiction issues barred a national class except where the defendant resided. *Brady v. Sullivan*, 893 F.2d 872, n. 7 (7th Cir. 1989) ("In *Califano v. Yamasaki*, 442 U.S. 682 (1979), the Court held that there are no legal limits on the geographical scope of a class action brought in federal district court."); *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987) ("The certification of a nationwide class, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court.").

## II.    THE DISTRICT COURT ERRED IN APPLYING *BRISTOL-MYERS* IN THE CLASS ACTION CONTEXT

*Bristol-Myers* involved a state law mass tort claim filed in California state court by over 600 mostly out-of-state plaintiffs. *Bristol-Myers*, 137 S.Ct. at 1777. The defendant pharmaceutical manufacturer was not incorporated in California, nor was it headquartered there. *Id.* at 1777-78. The Supreme Court held that the non-California plaintiffs had to show a connection between California and their individual claims.   *Id* at 1781. Because no such connection existed, the Supreme Court held that the California state court lacked specific personal jurisdiction over their individual claims. *Id* at 1782. The Court was concerned not only with fairness to the defendant but federalism– "the more abstract matter of submitting [the defendant] to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* at 1790.   The Court noted that it left open the question of whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.,* at 1784.

The decision specifically did not address state or federal class action claims. *Id* at 1787, n.4 (Sotomayor, J., dissenting) (the Court today does not confront the question whether its opinion here would also apply to a class action).   In fact, it distinguished *Shutts* on the basis that it was a class action, stating └=ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.   *Id.* at 1782-84; *see also Muir v. Nature's Bounty (DE), Inc.*, 15cv9835, 2018 WL 3647115, *4 (N.D.Ill. 2018) ("[T]he Supreme Court expressly limited the holding in *Bristol-Myers* to the exercise of

personal jurisdiction by state courts.")

*Bristol-Myers* does not "hold[] that due process requires the defendant be subject to specific jurisdiction not only as to the named plaintiff's claims, but also as to the absent class members' claims." [Dkt. 58, p.10]. There were no absent class members in *Bristol-Myers*—all were individual plaintiffs who were able to fully participate in the litigation and pursue their claims against the defendant. The Supreme Court not only declined to decide the issue of personal jurisdiction with respect to unnamed, absent class members in any class action case—state or federal—in *Bristol-Myers*, it explicitly distinguished prior decisions on personal jurisdiction in other contexts.

## III. AS MOST OTHER COURTS HAVE HELD, DUE PROCESS DOES NOT CALL FOR MINIMUM CONTACTS BETWEEN EACH CLASS MEMBER AND THE FORUM

Because the named plaintiff will conduct the litigation on behalf of the class, broadening the class from Illinois residents to a national class does not present a due process issue. If a national class is properly certified the burden on the defendant of litigating against a national class is not significantly greater than if suit were filed on behalf of a single-state class. If personal jurisdiction exists with respect to the named plaintiff and there is no question about the propriety of a one-state class, the defendant would face the burden of litigating the basic legal and factual issues in any event. The addition of more class members does not materially increase the inconvenience of litigation—the damages sought may be greater, but the litigation burden is not.

Therefore, "[b]ecause of the unitary nature of that class claim, the Court perceives no unfairness in haling the defendant into court to answer to it in a forum that has specific jurisdiction over the defendant based on the representative's claim." *Sanchez, supra,* 297

F.Supp.3d at 1366.

In other contexts, federal courts have exercised "pendent personal jurisdiction" when a court has personal jurisdiction for one claim but not others arising out of the same nucleus of operative fact. *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002); *Robinson Engineering Co. Pension Plan and Trust v. George,* 223 F.3d 445, 449-50 (7th Cir. 2000); *Sloan v. General Motors LLC*, 287 F.Supp.3d 840, 859-60 (N.D. Cal. 2018). Since Rule 23 requires that the claims of the plaintiff be typical of the legal and factual claims of the class members, the same principle applies here. Due process does not prevent a court properly seized of a controversy from adjudicating it completely.

In *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, *supra,* 2017 WL 5971622, the court concluded:

> Accordingly, it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties. And Congress has done so repeatedly with Rule 4, MDLs, and class actions. Under Defendants premise, *BMS* [*Bristol-Myers*] would require plaintiffs to file fifty separate actions in fifty or more separate district courts across the United States—in clear violation of congressional efforts at efficiency in the federal courts.

Similarly, in *Fitzhenry-Russell v. Dr. Pepper Snapple Group*, *supra*, the court held that *Bristol-Myers* does not extend to class actions because, unlike in a mass tort action where each plaintiff was a real party in interest to the complaints, …in a putative class action …one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, 2017 WL 4224723, at *5.

Most recently, in *Haj*, Judge Feinerman denied a motion to strike class allegations similar to that granted by Judge Kendall:

> [Defendant] does not cite, and the court has no knowledge of, any pre-*Bristol-Myers* decision holding that, in a class action where the defendant is not subject to general jurisdiction, specific jurisdiction must be established not only as to the named plaintiff(s),

11

but also as to the absent class members. The pre-*Bristol-Myers* consensus, rather, was that due process neither precluded nationwide or multistate class actions nor required the absent-class-member-by-absent-class-member jurisdictional inquiry urged by [Defendant]. *Bristol-Myers* does not alter that landscape. 2018 WL 3707561 at *1-2.

The key question, Judge Feinerman explained, is whether absent class members are parties for purposes of assessing personal jurisdiction over the defendant—if so, then specific jurisdiction must be assessed as to each absent class member s claim, and if not, then not. Just as absent class members are not parties for purposes of diversity of citizenship, amount in controversy, Article III standing, and venue, they are not parties for purposes of personal jurisdiction over the defendant. *Id* at *2.

In *Swamy v. Title Source, Inc., supra,* 2017 WL 5196780, at *5, the court held that *Bristol-Myers* did not apply in FLSA collective actions. Unlike the claims at issue in *Bristol-Myers*, we have before us a federal claim created by Congress specifically to address employment practices nationwide. *See* 29 U.S.C. §§202, 207(a). Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated,' and in no way limited those claims to in-state plaintiffs. *Id*. at *2. The Court continued: "The result of the rule Title Source urges would be that each putative collective member not residing in either the state where the suit is brought, or a state where the defendant is domiciled, could not be part of the collective action. This would splinter most nationwide collective actions, trespass on the expressed intent of Congress and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Id.*

**IV.    THE SCOPE OF A FEDERAL QUESTION CLASS ACTION IN FEDERAL COURT IS GOVERNED SOLELY BY RULE 23 AND NOT BY DUE PROCESS, DIRECTLY OR THROUGH RULE 4**

In holding that each member of a class must establish minimum contacts as if they had sued individually, the district court effectively holds that either constitutional due process or the Federal Rules of Civil Procedure requires application of state law due process limits on personal jurisdiction to determine the scope of the class in a federal question case filed in federal court.

There is certainly no basis in the Constitution itself for this proposition.   A federal court in a federal question case can constitutionally exercise jurisdiction over anyone with minimum contacts with the United States as a whole.   *KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 730-31 (7th Cir. 2013); *Fitzpatrick v. Law Sols. Chicago, LLC,* 584 B.R. 203, 214 (E.D.Tenn. 2018).   The federalism concerns expressed in *Bristol-Myers* are inapplicable to a federal court hearing a federal claim.

In an individual lawsuit, Rule 4(k) often requires the Court to determine whether a court of the state in which it sits would have personal jurisdiction.   However, nothing in Rule 4 purports to address the geographic scope of a class where there is no issue as to personal jurisdiction with respect to the plaintiff and a single-state class.   Given the fact that Rule 23 specifically deals with class actions, while Rule 4 does not refer to class actions or their scope at all, the former is clearly controlling as to the present case.   Rule 23(b)(3) expressly refers to the extent and nature of any litigation concerning the controversy already begun by or against class members and the desirability or undesirability of concentrating the litigation of the claims in the particular forum," both of which recognize that a class action may extend beyond the boundaries of the particular forum.

The most reasonable construction of the Rules, and that which has historically prevailed, is that Rule 4 addresses only whether the named plaintiff has established personal jurisdiction over the defendant with respect to its individual claim. *Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001) ("[P]ersonal jurisdiction or venue need not be proper as to the unnamed members of the plaintiff class, so long as it is proper as to all named plaintiffs"); *Chernus*, 2018 WL 1981481 at *7 ("unnamed class members are irrelevant to the question of specific jurisdiction"); *Casso's Wellness Store & Gym*, 2018 WL 1377608 at *5 ("[I]n a putative class action, the plaintiff seeking to represent the class is the only plaintiff named in the complaint, and his claims—not the unnamed non-resident members—are relevant to the personal jurisdiction inquiry"); *Day*, 2017 WL 478186 at *2 ("[T]he inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members").

If the named plaintiff seeks to proceed on behalf of a class, the propriety and scope of certification is to be evaluated under Rule 23 and only Rule 23. "Rule 23 unambiguously authorizes any plaintiff, in any federal civil proceeding, to maintain a class action if the Rule's prerequisites are met." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 406 (2010).

Furthermore, even if Rule 4(k) applied, a "federal statute" includes a properly-issued federal rule. *Marsh v. Kitchen*, 480 F.2d 1270, 1273 n.8 (2nd Cir. 1973); *Fitzpatrick, supra*, 584 B.R. at 213-215 (E.D. Tenn. 2018). The question is therefore whether Rule 23 authorizes a nationwide class without regard to whether it is filed where the defendant resides or is domiciled. Rule 23, as construed by the U.S. Supreme Court in *Califano, supra*, does just that.

Judge Kendall relied heavily on the *Cirque du Soleil* case, which suggests that if Rule 23 authorized a nationwide class action in a jurisdiction where the defendant was not domiciled or headquartered, it could abridge, enlarge or modify substantive rights in violation of the Rules Enabling Act, 28 U.S.C. §2072. This is wrong. As the Supreme Court made clear in *Shady Grove*, 559 U.S. at 407, which *Cirque du Soleil* does not discuss,

> [All] this limitation means [is] that the Rule must really regulat[e] procedure—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them… The test is not whether the rule affects a litigant's substantive rights; most procedural rules do… What matters is what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not.

In *Shady Grove,* the Supreme Court held that in a diversity case Rule 23 displaced a provision of the New York Civil Practice Law and Rules prohibiting class actions for statutory damages unless the statute expressly authorized class relief.

> [W]e think it obvious that rules allowing multiple claims (and claims by or against multiple parties) to be litigated together are also valid. See, e.g., Fed. Rules Civ. Proc. 18 (joinder of claims), 20 (joinder of parties), 42(a) (consolidation of actions). Such rules neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed. For the same reason, Rule 23—at least insofar as it allows willing plaintiffs to join their separate claims against the same defendants in a class action—falls within §2072(b)'s authorization. A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged. 559 U.S. at 408.

The fact that Allstate's exposure in one lawsuit was increased from $500 to $5 million did not make application of Rule 23 to effect that result something other than "procedural."

Under *Shady Grove*, the geographic scope of a class action and the district in which a class action of given scope may proceed clearly concern "the manner and the means" by which

rights are enforced. The impact on the defendant of broadening a class from single-state to national is less than what was involved in *Shady Grove*. Rule 23, as construed in *Califano v. Yamasaki, supra*, controls, and its application does not violate due process.

## **CONCLUSION**

For the reasons stated above, plaintiff's petition for leave to appeal should be granted.

Respectfully submitted,

/s/ Daniel A. Edelman
Daniel A. Edelman

/s/Curtis C. Warner
Curtis C. Warner

Daniel A. Edelman (Counsel of Record)
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379

Curtis C. Warner
WARNER LAW FIRM, LLC
350 S. Northwest Hwy., Ste. 300
Park Ridge, IL 60608
(847) 701-5290

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, certify that on November 7, 2018, a true and accurate copy of the foregoing document was served via U.S. mail and email upon the following parties:

Edward C. Eberspacher
Meyer Law Group LLC
30 North LaSalle Street, Suite 1410
Chicago, Illinois 60602
Phone: 312.265.0565
Fax: 312.888.3930
Email: teberspacher@meyerlex.com

*Counsel for IQVIA Inc.*

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 41-0379 (FAX)

**STATEMENT PURSUANT TO CIRCUIT RULE 30**

I, Daniel A. Edelman, hereby certify that all of the material required by parts (a) and (b) of Circuit Rule 30 are included within the following Appendix.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 41-0379 (FAX)

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1.       This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B)(iii):

      This document contains 4,829 words according to the word-count feature of Microsoft Word 2016.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

      This document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point font.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 41-0379 (FAX)

## SHORT APPENDIX

Memorandum Opinion and Order of October 26, 2018......................................................APP 1-16

Amended Complaint .......................................................................................................APP 17-32

*Braver v. Northstar Alarm Services*, *LLC*,
    5:17cv00383, __ WL __ (W.D.Okla. Oct. 15, 2018)...................................................APP 33-60

# APPENDIX A

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FLORENCE MUSSAT, M.D., S.C., on behalf of plaintiff and the class members defined herein, ) ) ) ) | |
| *Plaintiff*, ) ) | Case No.  17 C 8841 |
| v. ) ) | Judge Virginia M. Kendall |
| IQVIA INC., and JOHN DOES 1–10, ) ) ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION AND ORDER

Florence Mussat, M.D, S.C. sued IQVIA Inc. on behalf of a putative class, alleging that IQVIA violated the Telephone Consumer Protection Act by sending it two "unsolicited advertisements" via fax. (Dkt. 1.)  Mussat sought to represent the putative class without geographic restriction, including non-Illinois residents who did not receive the alleged faxes in Illinois. *Id*. After another district court applied *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), to a federal class action under the Act, IQVIA moved to strike Mussat's class definition, arguing that this Court lacks personal jurisdiction over IQVIA with respect to the unnamed putative class members who are not Illinois residents. *Id*.  Because those individuals also did not receive the alleged faxes in Illinois, their claims do not relate to IQVIA's contacts with Illinois, so IQVIA contends that this Court lacks specific jurisdiction over it. *Id*.  Mussat claims that Supreme Court precedent

Page 1 of 15

permits the maintenance of a nationwide class action without the plaintiff's satisfaction of the "minimum contacts" analysis. (Dkt. 51.) The focus of the personal jurisdiction inquiry, however, is the defendant's relationship to the forum state, and because Mussat's lawsuit does not arise out of or relate to IQVIA's contacts with this forum, the Court grants its motion to strike Mussat's class definition.

## BACKGROUND

Mussat is an Illinois corporation with its principal place of business in Illinois. (Dkt. 15.) IQVIA is a Delaware corporation with its principal place of business in Pennsylvania. *Id.* Mussat sued IQVIA under the Telephone Consumer Protection Act, seeking to represent a geographically unrestricted putative class of individuals, including:

> (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (c) were sent faxes by or on behalf of defendant IQVIA, promoting its good or services for sale (d) and which did not contain an opt out notice as described in 47 U.S.C. § 227.

*Id.* Mussat contends that IQVIA violated the Act by sending junk faxes to the unnamed members of the putative class. *Id.*

On February 27, 2018, Mussat amended its complaint. *Id.* IQVIA then amended its answer on March 21, just nine days following *Practice Mgmt. Support Services, Inc. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840 (N.D. Ill. 2018). (Dkt. 26.) In its answer, IQVIA expressly denied the existence of this Court's personal jurisdiction over it—whether it be general or specific—regarding the claims of the unnamed

putative class members residing outside Illinois. *Id.* IQVIA also contested Mussat's class definition and affirmatively pled a consistent personal jurisdiction defense. *Id.*

## STANDARD OF REVIEW

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In so doing, the court exercises considerable discretion. *See Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Courts generally disfavor motions to strike that serve only to delay, but favor those that serve to expedite the case by removing any unnecessary clutter. *See, e.g., Sapia v. Bd. of Educ. of City of Chicago*, No. 14-CV-07946, 2018 WL 1565600, at *4 (N.D. Ill. Mar. 31, 2018) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

Courts will strike pleadings that are insufficient as a matter of law, "meaning they bear no relation to the controversy or would prejudice the movant." *See, e.g., Gress v. Reg'l Transportation Auth.*, No. 17-CV-8067, 2018 WL 3869962, at *5 (N.D. Ill. Aug. 15, 2018) (citations omitted). The moving party bears the burden of showing the "challenged allegations are so remote to the plaintiff's claim that they lack merit . . ." *See, e.g., id.* (citation omitted). Should the request for relief be unrecoverable as a matter of law, the court will strike it. *See, e.g., Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, No. 17 CV 04384, 2018 WL 1508485, at *2 (N.D. Ill. Mar. 27, 2018).

## ANALYSIS

IQVIA argues that this Court cannot assert personal jurisdiction over it regarding the nonresident putative class members' claims because those claims do not arise out of, or relate to, IQVIA's contacts with Illinois. Mussat, in response, claims that IQVIA "waived" its personal jurisdiction defense, and even if it did not, its contention is contrary to Supreme Court precedent, which supports the further proposition that *Bristol-Myers* does not apply to class actions.

## I.    Forfeiture

As an initial matter, IQVIA did not forfeit (voluntary relinquish) its personal jurisdiction defense. A party that moves under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). True enough, IQVIA did not assert a lack of personal jurisdiction when it moved to dismiss on March 14, 2018. (Dkt. 24–25.) So, if this personal jurisdiction argument was "available" to IQVIA, then its motion to strike is improper because IQVIA omitted the defense "from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h)(1)(A). If, however, the argument was not available to IQVIA at the time it moved to dismiss, then it did not forfeit that defense because it made it "by motion under this rule" and included it "in an amendment allowed by Rule 15(a)(1) as a matter of course." *Id.* at 12(h)(1)(B). A defense is available if the standard that governs it would have been the same if relied on earlier. *See Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1237 (10th Cir.), *cert. denied*, 137 S. Ct. 90 (2016).

Here, IQVIA's personal jurisdiction defense was not available to it when it moved to dismiss on March 14. First, on its face, *Bristol-Myers* did not apply to class actions. *See* 137 S. Ct. 1773, 1787 n.4 (2017) (Sotomayor, J., dissenting) (observing that "[t]he Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.") (citations omitted). Second, no court applied the Supreme Court's holding or reasoning to a class action under the Telephone Consumer Protection Act until two days before IQVIA filed its motion to dismiss on other grounds. *See Practice Mgmt. Support Services, Inc. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840 (N.D. Ill. 2018) (Durkin, J.). Following that decision, IQVIA timely amended its first responsive pleading "as a matter of course" under Rule 15(a)(1) on March 21, just nine days later. (Dkt. 26.)

Mussat could not seriously expect IQVIA to know this defense was available to it at the time it could have first raised it. *Cf. Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (noting that a party does not waive a defense when controlling precedent previously foreclosed it). IQVIA timely raised the defense following the intervening decision in *Practice Mgmt. Support Services, Inc.*, once it was apparent the defense was cognizable under *Bristol-Myers*. *See Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004). It would have, in fact, been bordering on futile for IQVIA to assert the defense under precedent at the time. *See, e.g., VitalGo, Inc. v. Kreg Therapeutics*, Inc., No. 16-CV-5577, 2017 WL 6569633, at *5 (N.D. Ill. Dec. 21, 2017); *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BAS-BGS, 2017 WL 6059159, at *6

(S.D. Cal. Dec. 6, 2017); *see also In re Micron Tech., Inc.*, 785 F.3d 1091, 1094 (Fed Cir. 2017) (stating that a venue defense raised after an intervening decision was not available, thus making the waiver rule inapplicable).

Even if IQVIA did forfeit its defense, the Court would exercise its discretion to excuse the forfeiture. *See* Fed. R. Civ. P. 12(f)(1) (stating that the "court may act on its own" to strike material); *see, e.g., Leibowitz v. Bowman Int'l, Inc.*, No. 15 C 3021, 2016 WL 6804580, at *9 (N.D. Ill. Nov. 17, 2016) (quoting *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399 (7th Cir. 1991) (clarifying that a court acting under Rule 12(f) has the discretion "to consider a motion to strike at any point in a case," even when the court's attention "was prompted by an untimely filed motion.")); *Fed. Deposit Ins. Corp. v. Giannoulias*, No. 12 C 1665, 2014 WL 3376892, at *1 (N.D. Ill. July 10, 2014) (recognizing that courts "retain discretion to strike material from a pleading after the motion deadline in Rule 12(f)(2) has passed" because 12(f)(1) does not impose a similar time period)).

Indeed, this Court has the independent obligation to identify and apply the law correctly. *See, e.g., Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 877 (N.D. Ill. 2017) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)); *see also ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (excusing forfeiture and reasoning that "[f]ederal courts are entitled to apply the right body of law, whether the parties name it or not"). Other courts to consider the issue in this context excused the forfeiture. *See, e.g., Practice Mgmt. Support Services, Inc.*, 301 F. Supp. 3d at 863–64; *America's Health & Resource center Ltd. v. Alcon Laboratories,*

*Inc.*, 16-cv-04539, at *8–9 (N.D. Ill. June 15, 2018) (order striking the plaintiff's class definition to the extent it included non-Illinois residents). Finally, excusing the forfeiture in this case would not prejudice Mussatt because, as will be made clear below, Mussatt is free to pursue its claims on behalf of unnamed, nonresident class members in a court that has general jurisdiction over IQVIA.

## II. Personal Jurisdiction

Moving to the merits of the personal jurisdiction defense, this Court joins the litany of other courts in this District and elsewhere to hold that the Due Process Clause of the Fourteenth Amendment precludes the exercise of personal jurisdiction over a defendant in a putative class action where nonresident, absent members seek to aggregate their claims with an in-forum resident, even though the defendant allegedly injured the nonresidents outside of the forum. *See, e.g., Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) (Tharp, J.); *Practice Mgmt. Support Services, Inc.*, 301 F. Supp. 3d at 864 (Durkin, J.); *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (Leinenweber, J.); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (Ellis, J.); *but see, e.g., Haj v. Pfizer Inc.*, No. 17 C 6730, 2018 WL 3707561, at *1 (N.D. Ill. Aug. 3, 2018) (Feinerman, J.).

### A. *Bristol-Myers*

In *Bristol-Myers*, a group of primarily non-resident plaintiffs, which the defendant pharmaceutical manufacturer allegedly harmed outside of the forum, filed a mass tort action in California state court. *See* 137 S. Ct. at 1778. There, although

Page 7 of 15

the state court did not have general jurisdiction over the defendant, the state supreme court held that the trial court did have specific jurisdiction over the defendant with respect to the nonresidents' claims because those individuals could aggregate their claims with the residents'. *See id.* The Supreme Court reversed that decision, holding that the "mere fact that *other* plaintiffs were [injured] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781 (emphasis in original).

The Court reasoned that the "primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." *Id.* at 1779 (citations omitted). Indeed, "the *suit* must arise out of or relate to the defendant's contacts with the *forum.*" *Id.* at 1780 (internal quotation marks and brackets omitted). The Court left open, however, "the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4 (Sotomayor, J., dissenting).

Taking heed of the Supreme Court's admonition that the primary concern of the analysis is the burden on the defendant, other district courts applied these principles of specific jurisdiction to federal class actions. It appears that those courts agree that *Bristol-Myers* generally applies to bar nationwide class actions in federal court where the defendant allegedly *injured the named plaintiff outside the forum.* What they seem to disagree on, however, is whether that precedent controls beyond

that: in cases where the defendant allegedly *injured the named plaintiff inside the forum*, enabling that individual to represent the absent claims of the nonresident and unnamed putative class members who the defendant injured outside the forum. *Compare Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 872 (N.D. Ill. 2017) (reconsidering part of a motion to dismiss for lack of personal jurisdiction after *Bristol-Myers*, applying it to a named plaintiff in a putative class action, and granting it as to that named plaintiff who (1) did not reside in the forum state, (2) nor did the defendant allegedly injure him there, (3) nor did the defendant have any contacts with the forum in connection with that named plaintiff's claims, because the mere fact that his claims were similar, or even identical, to the resident plaintiff's claims did not permit the court to assert specific jurisdiction over the nonresident's claims), *and Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2018 WL 1784126, at *6 (N.D. Ill. Apr. 13, 2018) (similar), *with Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2018 WL 3707561, at *2 (N.D. Ill. Aug. 3, 2018) (denying the defendant's renewed motion to strike the complaint's nationwide class claims because (1) the named plaintiff resided in the forum state and (2) the defendant allegedly injured him there, so the court could assert specific jurisdiction over his claims, and it needed not do so over the absent class members' claims that lacked the requisite nexus to the forum because those individuals were not parties for the purposes of assessing personal jurisdiction over the defendant, only the named plaintiff was).

Turning to the matter before the Court, first, because the Telephone Consumer Protection Act does not authorize nationwide service of process, this Court looks to

Illinois law and the Due Process Clause of the Fourteenth Amendment for the applicable limits on its exercise of personal jurisdiction. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). That being so, this Court does not have general jurisdiction over IQVIA because it is a Delaware corporation and its principal place of business is in Pennsylvania. (Dkt. 15.)

Second, *Bristol-Myers* applies here, at least in the sense that this is a class action in federal court, so there must be a named plaintiff allegedly injured inside the forum state, Illinois. Mussat is an Illinois corporation with its principal place of business also in Illinois and Mussat alleged that it received the two junk faxes from IQVIA in Illinois. *Id.* The question, then, for this Court is whether it must have specific jurisdiction over IQVIA as to each of the absent class members' claims that Mussat seeks to represent. *Bristol-Myers* holds that due process requires the defendant be subject to specific jurisdiction not only as to the named plaintiff's claims, but also as to the absent class members' claims.

## B. Absent Class Members' Claims

For this Court to exercise specific jurisdiction, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotation marks and brackets omitted) (emphasis in original). Indeed, "the mere fact" that Mussat received two faxes in Illinois "does not allow" for an exercise of "specific jurisdiction over the nonresidents' claims" with respect to faxes received outside of Illinois because those absent class members' claims do not relate to IQVIA's contacts with Illinois. *Id.* at 1781 (brackets omitted). It follows, then, that exercising

specific jurisdiction over IQVIA with respect to the nonresidents' claims would violate IQVIA's due process rights. Therefore, the Court must strike the class definition to the extent it asserts claims of nonresidents. This ruling should "streamline discovery and simplify the disputed issues." *See, e.g., America's Health & Resource center Ltd. v. Alcon Laboratories, Inc.*, 16 C 04539, at *8 (N.D. Ill. June 15, 2018) (order granting motion to strike).

Mussat argues against this result, claiming that it is contrary to Supreme Court precedent, namely *Califano v. Yamasaki*, 442 U.S. 682, 709 (1979), and *Phillips Petroleum v. Shutts*, 472 U.S. 797, 811–12 (1985). Yet, *Califano* did not address the propriety of specific jurisdiction over absent class members' claims. *See* 442 U.S. at 684. Even so, the Court did, in fact, assume several times for the purposes of deciding that case that jurisdiction was a prerequisite to the statutory, class certification, and remedial requirements at issue there. *See id.* at 701, 702 (stating that where "the district court has jurisdiction over the claim of each individual member of the class," "where the district court has jurisdiction over the claims of the members of the class," and "if jurisdiction lies over the claims of the members of the class . . ."). Otherwise, *Califano* is inapposite, and for the same reasons, so is *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018) (reviewing the scope of a nationwide injunction).

As for *Shutts,* the Court considered an exercise of personal jurisdiction over *plaintiffs*, not defendants. *See* 472 U.S. at 811–12. As it happens, the Court spent a good portion of its opinion distinguishing between absent class action plaintiffs and absent defendants, reasoning that states place fewer burdens upon plaintiffs than

they do on defendants, and as such, the according due process protections differ between the two. *See id.* at 808–12 (explaining that the "burdens placed by a State upon an absent class-action plaintiff are not of the same order or magnitude as those it places upon an absent defendant. An out-of-state defendant summoned by a plaintiff is faced with the full powers of the forum State to render judgment *against* it," and because "States place fewer burdens upon absent class plaintiffs than they do upon absent defendants in nonclass suits, the Due Process Clause need not and does not afford the former as much protection from state-court jurisdiction as it does the latter.") (emphasis in original). In *Shutts*, as here, "the class-action defendant itself has a great interest in ensuring that the absent plaintiff's claims are properly before the forum." *Id.* at 809.

If anything, *Shutts* counsels against Mussat's position in this case. The Supreme Court recognized as much in *Bristol-Myers* when it expressly distinguished *Stutts*. *See* 137 S. Ct. at 1783 (clarifying that because "*Shutts* concerned the due process rights of [nonresident] plaintiffs . . . it has no bearing on the question presented."). Unlike this case, the Court concluded that the defendant in *Shutts* "did not assert that [the State] improperly exercised personal jurisdiction over it, and the Court did not address that issue." *Id.* Here, however, IQVIA claims that this Court's exercise of personal jurisdiction over it would violate its due process rights, not the due process rights of the nonresident class members.

Following the Supreme Court's lead in *Bristol-Myers* and applying its core reasoning here, due process, as an "instrument of interstate federalism," requires a

connection between the forum and the specific claims at issue. 137 S. Ct. at 1780–81. This recognition bars nationwide class actions in fora where the defendant is not subject to general jurisdiction. Whether it be an individual, mass, or class action, the defendant's rights should remain constant. *See, e.g., Practice Mgmt. Support Servs., Inc.*, 301 F. Supp. 3d at 861 (deciding that under "the Rules Enabling Act, a defendant's due process interest should be the same in the class context" as all others).

*Shady Grove Orthopedic Assocs., PA v. Allstate Ins. Co.*, 559 U.S. 393 (2010) does not change this. There, the Court merely held that Rule 23 preempted conflicting state laws. *Id.* at 399. Here, however, there is no conflicting state law at issue. Moreover, the Constitution and state law guide the personal jurisdiction analysis, which affects only the forum where this suit may be brought. That consequence does not run afoul of the Rules Enabling Act. Conversely, faithfully interpreting the Act here ensures the consistent and uniform application of defendants' due process rights in class actions under Rule 23, as compared to the maintenance of individual or mass actions. This construction ensures that Rule 23—a rule of procedure subject to the Act's limitations—does not violate the Act by extending the personal jurisdiction of the federal courts to "abridge, enlarge or modify" a "substantive right." 28 U.S.C. § 2072(b).

## III. Venue

As a final matter, Mussat asks this Court to transfer the case to the United States District Court for the District of Delaware or the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1406. (Dkt. 51.) But venue

is appropriate in the Northern District of Illinois, *see* 28 U.S.C. § 1391(b)(2)–(3), so that statute cannot support transferring this case. *See In re LimitNone, LLC*, 551 F.3d 572, 575–76 (7th Cir. 2008). Because venue is proper here, § 1404(a), rather than § 1406(a), provides the authority for a potential transfer. *See id.* (citing 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.")). In its discretion, the Court declines to transfer the case. Mussat remains free to voluntarily dismiss this case and refile it in a court where IQVIA is subject to that court's general jurisdiction.

APPENDIX 15

## CONCLUSION

Because there is no connection between Illinois and the absent class members' claims, the Court grants IQVIA's motion to strike Mussat's class definition to the extent that Mussat seeks to assert those claims on behalf of nonresidents that did not allegedly receive faxes in Illinois.


Virginia M. Kendall
United States District Judge

Date: October 26, 2018

APPENDIX 16

# APPENDIX B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FLORENCE MUSSAT, M.D., S.C., on behalf of plaintiff and the class members defined herein, | ) ) ) ) | |
| Plaintiff, | ) ) | 17 C 8841 |
| v. | ) ) | Judge Kendall |
| | ) | Magistrate Judge Martin |
| IQVIA INC., and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) ) | |

## AMENDED COMPLAINT  – CLASS ACTION

## INTRODUCTION

1.     Plaintiff Florence Mussat, M.D., S.C. brings this action to secure redress for the actions of defendant IQVIA Inc. ("IQVIA"), in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

2.     The TCPA expressly prohibits unsolicited fax advertising.  Unsolicited fax advertising damages the recipients.  The recipient is deprived of the use of its fax machine.  The recipient also wastes valuable time it would have spent on something else.  Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, cost the recipient ink or toner used to print the junk faxes and require labor to attempt to identify the source and purpose of the unsolicited faxes.

1

## PARTIES

3.      Plaintiff Florence Mussat, M.D., S.C. is an Illinois professional corporation located at 680 N. Lake Shore Drive, Suite 1030, Chicago, Illinois 60611, where it maintains telephone facsimile equipment.

4.      Defendant IQVIA is a Delaware corporation. Its registered agent and office is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. IQVIA was formed through the merger of IMS Health Inc. and Quintiles IMS Health Inc.

5.      Defendant is engaged in data mining for the healthcare industry. Among other things, it obtains information about drug prescriptions from physicians and pharmacies in exchange for compensation. It aggregates, organizes and sells the data to support the marketing efforts of drug makers and others.

6.      While most of defendant's sales are made to companies in life sciences, including pharmaceutical companies, biotechnology companies, device and diagnostic companies, and consumer health companies, defendant also sells to payers, government and regulatory agencies, healthcare providers, pharmaceutical distributors, and pharmacies.

7.      Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction under 28 U.S.C. §1331. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*,

2

427 F.3d 446 (7th Cir. 2005).

9.    Personal jurisdiction exists in that defendants:

    a.    Have committed tortious acts in Illinois by causing the transmission of

        unlawful communications into the state.

    b.    Have transacted business in Illinois.

10.    Venue in this District is proper for the same reason.

## FACTS

11.    On November 10, 2017, plaintiff Florence Mussat, M.D., S.C. received the
unsolicited fax advertisement attached as Exhibit A on its facsimile machine.

12.    On December 4, 2017, plaintiff Florence Mussat, M.D., S.C. received the
unsolicited fax advertisement attached as Exhibit B on its facsimile machine.

13.    Discovery may reveal the transmission of additional faxes as well.

14.    Defendant IQVIA is responsible for sending or causing the sending of the faxes.

15.    Defendant IQVIA, as the entity whose products or services were advertised in the
faxes, derived economic benefit from the sending of the faxes.

16.    The fax seeks membership in the National Disease and Therapeutic Index
("NDTI").

17.    The NDTI is a database product that is commercially available to pharmaceutical
manufacturers and other members of the healthcare industry.

18.    The NDTI was developed in 1958 to provide representative data on the population
for whom drugs are prescribed, as well as the prescribers, in the United States.

19.    The basic data is gathered in an ongoing fashion from a panel of 3,700 physicians

selected to represent a statistical sample of practicing physicians. Since a large proportion of practitioners are primary-care providers (e.g., general practitioners or internal medicine specialists), these groups are well sampled. Smaller specialty groups, such as ear, nose, and throat physicians, are sparsely represented.

20.     Each panel physician records data every quarter for a two-day period, using a special duplicate prescription form for all drugs prescribed. When a prescription is written, not only is the usual information (drug name, amount, dosing instructions and duration) written, but also the indication for the drug, the patient's gender and age, the site of prescription (hospital, clinic, etc.), other drugs the patient is taking, other diagnoses, and some physical exam and laboratory data. This data, excluding patient identification, is provided to defendant for inclusion in the database.

21.     This NDTI database provides an ongoing national estimate of the pharmaceutical prescribing practices in the United States. This data is expressed as "mentions" of a pharmaceutical, since the information on pharmaceuticals is mentioned in both the actual prescription as well as concomitant therapy. Because of the careful sampling of practitioners, the actual numbers of mentions can be extrapolated to provide approximate national estimates of the characteristics of patients exposed to specific drug products and other products they are using.

22.     NDTI data is most often used by pharmaceutical manufacturer's marketing departments. Post-marketing surveillance and drug safety groups both within and outside the pharmaceutical industry also use this data to estimate the characteristics of populations for both epidemiological studies and for developing exposure denominators for pharmaceutical benefit and risk assessment.

4

23. IQVIA sells the information in the database for profit as part of its business activities.

24. To maintain a suitable sampling of physicians, IQVIA solicits physicians via facsimile.

25. Exhibits A and B invite plaintiff and other recipients to participate in defendant's study by collecting patient information and providing it to defendant.

26. Exhibits A and B do not identify any qualifications or pre-screening process in order to have a physician participate in defendant's study.

27. Medical professionals who participate in the NDTI program earn compensation in the form of points toward the purchase of merchandise, gift cards, tickets or links to medical journals and the AMA website.

28. On information and belief, other rewards, including defendant's products and services, are also available on www.imsrxpanels.com.

29. Defendant IQVIA either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

30. Each fax refers to an email address, phone and fax numbers used by defendant IQVIA.

31. Plaintiff had no prior relationship with defendant and had not authorized the sending of fax advertisements to plaintiff.

32. The fax did not contain an "opt out" notice in the form required by 47 U.S.C. §227.

33. The TCPA provides for affirmative defenses of consent or an established business

5

relationship. Both defenses are conditioned on the provision of an opt out notice that complies

with the TCPA. *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Nack v. Walburg*, 715 F.3d 680

(8th Cir. 2013).

34. On information and belief, the faxes attached hereto were sent as part of a mass

broadcasting of faxes.

35. On information and belief, defendant has transmitted similar unsolicited fax

advertisements to at least 40 other persons in Illinois.

36. There is no reasonable means for plaintiff or other recipients of defendant's

unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and

ready to receive the urgent communications authorized by their owners.

### COUNT I – TCPA

37. Plaintiff incorporates ¶¶ 1-36.

38. The TCPA makes unlawful the "use of any telephone facsimile machine,

computer or other device to send an unsolicited advertisement to a telephone facsimile machine

..." 47 U.S.C. §227(b)(1)(C).

39. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court
of a State, bring in an appropriate court of that State–**

**(A) an action based on a violation of this subsection or the regulations
prescribed under this subsection to enjoin such violation,**

**(B) an action to recover for actual monetary loss from such a
violation, or to receive $500 in damages for each such violation,**

6

whichever is greater, or

(C) both such actions.

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

40.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, including the cost of ink or toner to print the junk faxes and wear and tear on the recipient's fax machine. Defendant has shifted its costs of advertising on plaintiff and each class member. Furthermore, plaintiff's statutory right of privacy was invaded.

41.     Plaintiff and each class member is entitled to statutory damages.

42.     Defendant violated the TCPA even if its actions were only negligent.

43.     Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

44.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant IQVIA, promoting its goods or services for sale (d) and which did not contain an opt out notice as described in 47 U.S.C. §227.

45.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

46.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions

7

include:

a.  Whether defendants engaged in a pattern of sending unsolicited fax

advertisements;

b.  The manner in which defendants compiled or obtained their list of fax

numbers;

c.  Whether defendants thereby violated the TCPA;

47.  Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has

retained counsel experienced in handling class actions and claims involving unlawful business

practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not

to vigorously pursue this action.

48.  Plaintiff's claims are typical of the claims of the class members. All are based on

the same factual and legal theories.

49.  A class action is the superior method for the fair and efficient adjudication of this

controversy. The interest of class members in individually controlling the prosecution of

separate claims against defendants is small because it is not economically feasible to bring

individual actions.

50.  Several courts have certified class actions under the TCPA. *Sadowski v. Med1

Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design Ltd.

v Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred

Chiropractic Ctr., Ltd.,* 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,*

10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010);

*Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters,*

8

*LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.*, 306 S.W.3d 577 (Mo. App. 2010); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000).

51. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a. Actual damages;

b. Statutory damages;

c. An injunction against the further transmission of unsolicited fax advertising;

d. Costs of suit;

APPENDIX 26

e.     Such other or further relief as the Court deems just and proper.

 s/ Daniel A. Edelman  
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Curtis C. Warner
Warner Law Firm, LLC
350 S. Northwest Hwy., Suite 300
Park Ridge, IL 60068
(847) 701-5290

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


 s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

APPENDIX 28

# **EXHIBIT A**

**NDTI™** *National Disease and Therapeutic Index™*
*One IMS Drive*
*Plymouth Meeting, PA 19462*

**ATTENTION TO: Dr. FLORENCE MUSSAT**
IMS Reference #: 1125884

You are invited to join a select group of physicians who participate in a nationally recognized, **HIPAA-compliant study** that collects data from office-based physician practices. This is to track patterns of diseases and identify new therapeutic opportunities across the entire US.
**Two days per quarter**, record the following patient information **online.**

- Diagnosis
- Desired action
- Therapy (i.e., drugs prescribed)
- HIPAA-compliant patient demographics

**Your participation in this initiative will benefit both public and private-sector establishments across the globe,** including:

- Centers for Disease Control and Prevention
- Teaching hospitals and medical schools
- World Health Organization (WHO)
- Healthcare manufacturers and R&D

**REWARDS PROGRAM**

As a reward for your contributions, you will earn points towards the purchase of a wide variety of gifts from our catalog (www.imsrxpanels.com), items such as;
- GIFT CARDS (*Macy's, Target, Home Depot, Restaurants, Gas Cards, etc.*)
- TICKETS (*Cinemas, Concerts, Sporting Events*)
- MERCHANDISE (*Garmin®-GPS, KitchenAid®-Housewares, Apple®-electronics, VISA®-Cashcard.*)
- FREE LINKS to Medical Journals & AMA Website

**\*\*Please join by November 25th and receive 25 points sign-on bonus\*\***
*To receive the bonus points, you must report all your patient contacts for the two assigned days in December.*

### TO PARTICIPATE, PLEASE PRINT CLEARLY AND FAX TO 1-877-270-0502

_____Yes, I'll participate        _____ I would like to know more about the study. Contact me.

**Name**_____
**Address**_____
**City**_____ State_____ Zip_____
**Phone**_____ Fax_____
**Mobile Number**_____
**Primary Specialty**_____
**Email**_____

*For more information, please contact us via email at: Maribeth.Francisco@quintilesims.com*
*or via phone at: 1-866-373-0383.*

### *–PLEASE DISREGARD IF YOU ALREADY PART OF NDTI STUDY–*

# EXHIBIT B

 QuintilesIMS®

**NDTI™** *National Disease and Therapeutic Index™*
*One IMS Drive*
*Plymouth Meeting, PA 19462*

**ATTENTION TO: Dr. FLORENCE MUSSAT**
IMS Reference #: 1125884

You are invited to join a select group of physicians who participate in a nationally recognized, **HIPAA-compliant study** that collects data from office-based physician practices. This is to track patterns of diseases and identify new therapeutic opportunities across the entire US.
**Two days per quarter**, record the following patient information **online.**

- Diagnosis
- Desired action
- Therapy (i.e., drugs prescribed)
- HIPAA-compliant patient demographics

**Your participation in this initiative will benefit both public and private-sector establishments across the globe,** including:

- Centers for Disease Control and Prevention
- Teaching hospitals and medical schools
- World Health Organization (WHO)
- Healthcare manufacturers and R&D

**REWARDS PROGRAM**

As a reward for your contributions, you will earn points towards the purchase of a wide variety of gifts from our catalog (www.imsrxpanels.com), items such as:
- GIFT CARDS (*Macy's, Target, Home Depot, Restaurants, Gas Cards, etc.*)
- TICKETS (*Cinemas, Concerts, Sporting Events*)
- MERCHANDISE (*Garmin®-GPS, KitchenAid®-Housewares, Apple®-electronics, VISA®-Cashcard.*)
- FREE LINKS to Medical Journals & AMA Website

**TO PARTICIPATE, PLEASE PRINT CLEARLY AND FAX TO 1-877-270-0502**

____ Yes, I'll participate        ____ I would like to know more about the study. Contact me.

**Name**_____

**Address**_____

**City**_____ State_____ Zip_____
**Phone**_____ Fax_____
**Mobile Number**_____
**Primary Specialty**_____
**Email**_____

*For more information, please contact us via email at: Maribeth.Francisco@quintilesims.com*
*or via phone at: 1-866-373-0383.*
        **-PLEASE DISREGARD IF YOU ALREADY PART OF NDTI STUDY-**

APPENDIX 32

# <u>APPENDIX C</u>

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ROBERT H. BRAVER, for himself )
and all individuals similarly situated, )
                              )
          Plaintiff, )
                              )      Case No. CIV-17-0383 -F
-vs- )
                              )
NORTHSTAR ALARM SERVICES, )
LLC, a Company, et al., )
                              )
         Defendants. )

## ORDER CERTIFYING CLASS, INCLUDING
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

      Before the court is plaintiff Robert H. Braver's motion for class certification of the claim alleged in count one of the first amended complaint.[1]  Doc. no. 42. Count one alleges that defendants' robocalls delivered a prerecorded telemarketing message without plaintiff's or the class members' prior express written consent, in violation of the Telephone Consumer Protection Act (TCPA, or the Act), 47 U.S.C. §227(b), and 47 C.F.R. § 64.1200(a)(3).

      An evidentiary hearing was held on the motion on June 8, 2018.  At the conclusion of the hearing the court requested supplemental briefing along with

---

[1] The first amended complaint was deemed further amended by the court (see doc. no. 54) after the parties stipulated to the dismissal of count two.  Accordingly, count two is no longer alleged. Class certification has not been sought with respect to count three.

proposed findings of fact and conclusions of law. The briefing is complete, and the motion is ready for determination.[2]

Part I, the introduction to this order, reviews some of the general allegations, sets out the statute and regulation upon which count one depends, and describes the class and sub-class proposed by the plaintiff. Part II states the court's findings of fact. Part III states the court's conclusions of law. When it serves readability to do so, some fact-findings have been included in the conclusions of law portion of this order. To the extent that any matters have been characterized as conclusions of law when they are more accurately characterized as findings of fact, they should be so regarded. The court's findings and conclusions support certification of the proposed classes, which are described in Part IV. The schedule, going forward, is addressed in Part V.

## I. Introduction

### A. General Allegations

Plaintiff Robert H. Braver, individually and on behalf of all others similarly situated, brings claims against defendants, Northstar Alarm Services, LLC ("Northstar") and Yodel Technologies, LLC ("Yodel"), seeking to recover statutory damages based on defendants' alleged violations of the TCPA.

The first amended complaint alleges that Northstar hired Yodel to initiate telemarketing calls advertising Northstar's home security systems. Doc. no. 7, ¶ 2. Plaintiff alleges that Yodel initiated thousands of calls marketing Northstar's home security systems to residential telephone numbers using a prerecorded voice without express written consent, including calls to plaintiff's home telephone number, in

---

[2] The briefing includes the motion (doc. no. 42); NorthStar's response brief (doc. no. 57); Yodel Technologies' response brief (doc. no. 59); Braver's reply brief (doc. no. 62); Braver's supplemental brief (doc. no. 69); and Northstar's supplemental brief (doc. no. 71). The hearing transcript is at doc. no. 67.

violation of the TCPA, 47 U.S.C. § 227(b)(1)(B). *Id.* at ¶¶ 2, 3, 18, 22, 34. Plaintiff alleges that the defendants concealed their identities by spoofing phone numbers on caller IDs and using fictitious business names until consumers expressed enough interest in Northstar's goods and services to be transferred to a live representative. *Id.* at ¶¶ 19, 20, 21, 23, 24, 25, 26. Plaintiff alleges that Northstar is vicariously liable for Yodel's conduct. *Id.* at ¶¶ 36-42.[3]   Plaintiff and class members seek statutory penalties from $500 to $1500 per violation for defendants' willful violation of the TCPA. *Id.* at ¶¶ 60-62.

B. <u>The Statute and the Regulation Upon Which Count One Depend</u>

Title 47 U.S.C. § 227(b)(1)(B) makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."

Federal Communications Commission regulations promulgated under the TCPA include 47 C.F.R. § 64.1200, addressing delivery restrictions on telephone calls including "telemarketing" calls.[4] Subsection (a)(3) of § 64.1200 requires that consent for "telemarketing" calls must be "prior express written consent."[5]

The term "prior express written consent" is defined in the regulation as follows.

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice,

---

[3] The court previously dismissed any direct liability claims alleged against NorthStar, after plaintiff confessed that issue. Doc. no. 27, p. 7.

[4] "The term "telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

[5] The regulation states that except in situations not material here, "No person or entity may...[i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party...." 47 C.F.R. § 64.1200(a)(3).

and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

(i)   The written agreement shall include a clear and conspicuous disclosure informing the person signing that:

(A)   By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B)   The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(C)   The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).

## C.   Class and Subclass Requested for Certification

The motion seeks certification of a national class and sub-class pursuant to Fed.R.Civ.P. 23(a) and (b)(3), defined as follows.

Class:

All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 20[6] or 50[7] to the call, and that resulted in the normal clearing disposition.[8]

---

[6] Status Code 20 means that the called party responded to the prerecorded prompts by stating that they did not want to be called again.  Doc. no. 42-11, pp. 32-33.

[7] Status Code 50 means that the soundboard agent played at least six prerecorded message prompts during the call, *i.e.* up to the prerecorded question "Are you a U.S. citizen?"  Doc. no. 42-11, pp. 34-35.

[8] "Normal clearing" indicates successful call completion to the called party.  Doc. no. 42-4, p. 63.

4

Subclass:

All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 50 to the call, and that resulted in the normal clearing disposition.

Excluded from the class are:

Any persons whose contact information is associated with either an IP address or website URL in the Red Dot Data marketing list.[9]

## II. Findings of Fact

Northstar is in the business of providing security and home automation systems to home owners across most of the country. Doc. no. 69-1 at 23:9-11.[10]

In January of 2016, Northstar hired Yodel to place "soundboard" or "avatar" telemarketing calls on its behalf in order to sell home security systems. Doc. no. 42-3 at 31:7-10, 67:2-24; 42-4 at 16:617, 53:2-23, 55:6-17; doc. no. 42-5 at 98:18-24.

During these calls, "soundboard agents" played prerecorded audio files, in a scripted sequence, to the recipient. Doc. no. 42-5 at 97:14 – 98:1. The standard script (with each numbered paragraph representing a separate prerecorded audio file) begins as follows.

1. Intro: Hello this is Amy,[11] I am security advisor, can you hear me okay?

2. Purpose: Okay, good, I am with the security help center and the reason why I am calling today is that there have been issues with false alarms, with

---

[9] Because a few of the Red Dot Data records display an IP address or URL of a marketing website which one of the leads (sales leads, *i.e.* persons called) might have visited, and which might have displayed terms and conditions requiring consent to telemarketing calls, the proposed class definition excludes persons whose contact information, as shown in the records, is associated with either an IP address or a website URL, in an effort to preempt consent arguments.

[10] Depositions transcripts are cited by page number. Except when citing deposition transcripts, this order cites ecf page numbers.

[11] During the class period, the name and voice in the recordings changed but otherwise the script remained largely unchanged.

home security systems in your neighborhood, have you been informed about that?

3. Security Concern: With crime rates and mass shooting on the rise in the US and national security with our borders, you can see having false alarms with home security systems in your area can be a big concern right?

4. My job: So it's my job to make sure that all the homes in your neighborhood are aware of the technologies and security programs available in your area, I just have a couple of questions to see what your home will qualify for. Are you the homeowner? . . .

Doc. no. 42-1.

These calls were placed to persons with whom the defendants had no prior relationship. Doc. no. 42-4 at 18:8-19:6. Defendants purchased the class members' telephone numbers from a data vendor, Red Dot Data, which sells the landline telephone numbers, names, and addresses of homeowners across the country. *Id.* at 18:2-19:6, 24:24-25:12.

Prior to initiating the telemarketing campaign, defendants understood that these persons had not consented to receive prerecorded calls, but purportedly believed that they did not need consent to call landline telephone numbers. *Id.* at 25:20-26:12.

The soundboard dialing system caused an invalid telephone number, which began with the same area code as the telephone number dialed, to display on the recipient's caller ID. Doc. no. 42-2 at ¶¶ 36- 44; doc. no. 42- 5 at 87:9-19.

Plaintiff received two of these calls on August 26, 2018. Doc. no. 42-13 ¶¶3-5; doc. no. 42-14.

The soundboard dialing system generated records of these calls. Doc. no. 42-4 at 57:358:6; doc. no. 42-22. The call records identify, among other things, the number dialed, the number displayed on the caller ID, the date and time of the call,

6

the duration of the call,[12] the telephone network's disposition of the call, and the soundboard agents' treatment of the call via "status codes." Doc. no. 42-2 at p. 9, ¶ 27; doc. no. 42-4 at 59:1-19, 61:8-9, 62:15-20, 63:10-19, 66:22-67:16, 68:15 – 69:7, 69:17-70:9; doc. no. 42-5 at 83:6-10.

As previously stated, the proposed class is limited to calls resulting in status codes 20 or 50. Status code 20 means that the called party responded to the prerecorded prompts by stating that they did not want to be called again. Status code 50 means that the soundboard agent played at least six prerecorded prompts during the call. *See*, doc. no. 42-11 at 26:10-27:19, 32:25-33:2, 34:2-35:15.

Each one of these call records corresponds to a lead in the Red Dot Data marketing list. Doc. no. 42-22; doc. 42-4 at 59:1-19.

Plaintiff's expert, Robert Biggerstaff, analyzed the call records and marketing list and identified 239,630 persons (leads), and 252,765 calls to those persons, which fall within the parameters of the class definition. Doc. no. 42-2 at pp. 9-10 ¶¶ 32-33; doc. no. 67, TR at 89:1 – 90:14. He found that 47,398 persons (leads), and 54,204 calls to those persons, fall within the parameters of the sub-class definition. Doc. no. 42-2 at p. 10 ¶ 33.

### III. Conclusions of Law

### A. Personal Jurisdiction

Defendants argue that the court lacks personal jurisdiction over the defendants, relying on <u>Bristol-Myers Squibb Co. v. Superior Court of California</u>,

---

[12] Yodel's Rule 30(b)(6) witness testified at his deposition that it typically takes about 5 to 6 seconds after connection before the soundboard agent plays the first prerecorded prompt in the script. Doc. no. 42-11 at 71:9-19.

___ U.S. ___, 137 S. Ct. 1773 (June 19, 2017).  The court disagrees for the reasons stated below.

Defendants have waived this argument by (1) failing to raise it in either their answers or motions to dismiss, and (2) admitting personal jurisdiction in the joint status report filed with the court.[13]  Defects in the district court's personal jurisdiction over a party are waived unless timely raised in a pre-answer motion or in the answer.  Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986), citing Fed. R. Civ. P. 12(h)(1).  *And see*, Sobol v. Imprimis Pharmaceuticals, 2018 WL 2424009, **2-3 (E.D. Mich. May 29, 2018) (rejecting argument that Bristol-Myers was an intervening change in the law which permitted defendants to raise the personal jurisdiction issue for the first time after failing to raise it in their answer).

In addition, defendants' reliance on Bristol-Myers is misplaced.  This court joins the majority of other courts in holding that Bristol-Myers does not apply to class actions in federal court.  *See, e.g.,* Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc., 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018) (TCPA case; noting "the lack of federalism concerns in federal court" in TCPA class action); Sanchez v. Launch Tech. Workforce Solutions, LLC, 297 F. Supp. 3d 1360, 1367 (N.D. Ga. Feb. 14, 2018) (rejecting attempt to extend Bristol-Myers to federal court FCRA action, noting federalism concerns did not apply); In re Chinese-Manufactured Drywall Prod. Liability Litigation, 2017 WL 5971622, at *16 (E.D. La. Nov. 30, 2017) ("BMS does not speak to or alter class action jurisprudence."); Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc., 2017 WL 4224723, at *5 (N.D. Calif. September 22, 2017) (not extending Bristol-Myers to class actions, noting Bristol-Meyers was a mass tort action not a class action); Molock v. Whole Foods

---

[13] The joint status report, filed October 2, 2017 (after Bristol-Myers was decided), states: "The parties stipulate that the Court has personal jurisdiction over the parties."  Doc. no. 31 at p. 2.

Market, Inc., 297 F. Supp. 3d 114, 126 (D. D.C. 2018) ("Bristol-Myers does not apply to class actions.").

### B. Standards For Determining Certification

Plaintiff, as the party seeking class certification, has the burden of proof on all prerequisites to certification. Anderson Living Trust v. WPX Energy Production, LLC, 306 F.R.D. 312, 376 (10th Cir. 2015), citing authorities. Plaintiff has a strict burden to show that every aspect of Rule 23 is clearly met. Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006); *and see*, General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains...indispensable.").

The first inquiry is whether the plaintiff can show the existence of the four threshold requirements of Rule 23(a). *Id.* The four requirements are: 1) numerosity, 2) commonality, 3) typicality, and 4) adequacy of the representative party. The district court must engage in its own "rigorous analysis" to decide whether these requirements are met. CGC Holding Co., LLC v. Broad and Cassel, 773 F.3d 1076, 1085 (10th Cir. 2014) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).

If the court determines that the four prerequisites of Rule 23(a) are satisfied, "'it must then examine whether the action falls within one of the three categories of suits set forth in Rule 23(b)." Shook v. El Paso County, 386 F.3d 963, 971 (10th Cir. 2004), quoting Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir. 1988). Here, plaintiff seeks certification of a class under the third of these categories, per Rule 23(b)(3). Before a class action can be certified under Rule 23(b)(3), it is necessary for the court to find that: 1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that 2) a class action is "superior to other available methods for the fair and efficient

adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); <u>Monreal v. Potter</u>, 367 F.3d 1224, 1236-37 (10th Cir.2004).

"[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising [plaintiffs'] cause of action.'" <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 469 (1978), quoting <u>Mercantile Nat. Bank v. Langdeau</u>, 371 U.S. 555, 558 (1963). The court's view of the merits – assuming that there is some basis for guessing at the merits at the class certification stage – should not influence the decision on class certification. <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974). Nevertheless, the required rigorous analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 351, (2011).

Finally, whether to grant or deny certification of a class action under Rule 23 lies within the broad discretion of the district court. <u>Reed v. Bowen</u>, 849 F.2d 1307, 1309 (10th Cir.1988). The decision necessarily entails weighing the practical and prudential considerations raised by the facts unique to each case. <u>Id.</u> at 1309-1310.

### C. Fed.R.Civ.P. 23(a) Requirements

#### 1. Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Although there is no magic number of members which would require class certification, classes of more than forty members have been deemed to satisfy the numerosity requirement. *See, e.g.,* <u>Horn v. Associated Wholesale Grocers, Inc.</u>, 555 F.2d 270, 275-76 (10th Cir.1977) (class of 41 at time of filing, or 46 at time of trial, sufficient to warrant class certification). In evaluating numerosity, the court may also consider whether the proposed class members are geographically dispersed. <u>Zeidman v. J. Ray McDermott & Co.</u>, 651 F.2d 1030, 1038 (5th Cir.1981).

In this case, the proposed class and subclass contain, respectively, 239,630 and 47,398 persons residing throughout the United States. *See*, motion, doc. no. 42 at p. 18; and doc. no. 42-2 at pp. 10-11, ¶¶ 32-33. Joinder of 239,630 and 47,398 class members residing throughout the United States would be impracticable. The numerosity requirement is satisfied -- a point which defendants, in any event, concede. Doc. no. 57, p. 15.

### 2. Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This is a low hurdle. Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1356 (11th Cir. 2009). Commonality requires only a single issue common to the class. J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1288 (10th Cir.1999). The class claims must "depend upon a common contention ... capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

A core allegation with respect to count one is that calls using a prerecorded voice, in this case soundboard audio files, were placed to the proposed class members' residential telephone lines in an effort to market Northstar's home alarm systems. The technology in issue, called avatar or soundboard technology, involves humans who are purportedly listening in and who attempt to press computer buttons to generate a prerecorded response or a conversation which would be consistent with whatever the called party might have said. Doc. no. 67, TR at pp. 46-47.

Core allegations require determination of a number of common questions of fact and law, including: (1) whether the soundboard/avatar files used in the calls qualify as a "prerecorded voice" prohibited by the TCPA; (2) whether the calls constitute "telemarketing" under the FCC's rules; and (3) whether Northstar is liable for calls placed on its behalf through Yodel's system.

Defendants argue that factual variations in the calls raise individualized issues which prevent a finding of commonality. The court rejects that argument. Based on the evidence heard to date, it appears that all of the calls at issue delivered a prerecorded soundboard message. *See* doc. 67, TR at 84:14 – 91:2 (numerous measures taken to ensure that only calls which delivered a prerecorded soundboard message are included in the class). Whether the use of this technology violates the TCPA is common question for all of the calls in the proposed class. *See*, Margulis v. Eagle Health Advisors, LLC, 2016 WL 1258640 (E.D. Mo. 2016) (describing use of avatar technology and holding that these facts state a claim for relief under the TCPA).

Defendants also argue that common proof cannot show that all of the calls were to residential lines. Defendant argues, for example, that some of the numbers, including plaintiff's, may have been used for business purposes. Defendant has shown, for example, that plaintiff's number was included in the "Business Listing" section of an index of numbers complied by the Norman Chamber of Commerce. Doc. nos. 57-4, 57-5.[14]

The TCPA does not make an exception to its prohibition for calling telephone lines if the residential line is used for a home-based business or for another business purpose. Under other sections of the Act related to residential lines, such an exception has been rejected by the Federal Communications Commission. *See*, Rules and Regulations Implementing the TCPA, 70 FR 19330, 19331 (2005) ("We also decline to exempt from the do-not-call rules those calls made to 'home-based businesses....' "). Explicit Congressional findings accompanying the substantive

---

[14] The listings in question with respect to Braver, state "INDIVIDUALS" at the end of the listing. Doc. no. 57-4, p. 7, 11, 13; doc. no. 57-5, p. 2; doc. no. 57-6, p. 2. In addition, Braver testified that the phone number in question had been his residential phone number since his early teen years. Doc. no. 62-2, p. 91.

provisions of the TCPA itself state: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Public Law 102-243, § 2(12), 105 Stat. 2394 (1991) (note to 47 U.S.C. § 227).

The majority of courts to have considered this issue have concluded that factual questions related to personal use, as opposed to commercial use, do not prevent certification of consumer protection class actions. Yazzie v. Gurley Motor Co., 2015 WL 10818834, *5 (D. N. Mex. 2015). Moreover, if issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, in any event, through a standardized and efficient claims process at a later stage. See, e.g., id. (issues regarding the consumer nature of the transaction could be resolved simply by asking class members about their vehicle use during class notification process).

There are questions of law or fact which are common to all members of the proposed class. The commonality requirement is satisfied.

### 3. Rule 23(a)(3) -- Typicality

Rule 23(a)(3) requires that the claims of the representative party be "typical of the claims ... of the class." The purpose of the typicality requirement is to assure that the interest of the named class representative aligns with the interests of the class. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992). Typicality refers to the nature of the claim of the class representative and not to the specific facts from which it arose or to the relief sought. Id. Factual differences will not render a claim atypical if the claim is based on the same legal or remedial theory and arises from the same events or course of conduct as do the claims of the class.

13

Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988); Edgington v. R.G. Dickinson and Co., 139 F.R.D. 183, 189 (D.Kan.1991) (typicality ensures the class representative's claims resemble the class's claims to an extent that adequate representation can be expected; an important part of typicality is the inquiry into whether the representative's interests or claims are antagonistic or adverse to those of the class); A Aventura Chiropractic Center v. Med Waste Management, 2013 WL 3463489, *4 (S.D. Fla. 2013) ("A Aventura satisfies typicality as the course of conduct that produced its TCPA claim also produced the claims of the proposed class.")

Defendants argue that Braver's claim is not typical because his number was published by the Norman Chamber of Commerce. That argument is specious. The evidence shows quite clearly that defendants wanted to call residential telephone numbers and obtained Braver's number not from the Norman Chamber of Commerce but from Red Dot Data. The fact that Braver's number is included in a publication by the Norman Chamber of Commerce does not defeat typicality.

Braver's claim and the class members' claims arise from the same operative allegation: that without express written consent, a call was initiated, using a prerecorded voice, to Braver's and the class members' residential telephone lines, in an effort to market Northstar's home security systems, in violation of the TCPA. Braver's claim is typical of the class member's claims. The typicality requirement is satisfied.

### 4. Rule 23(a)(4) -- Adequacy

Rule 23(a)(4) requires that the representative party must "fairly and adequately protect the interests of the class." With regard to the adequacy requirement, two questions must be resolved: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members? and (2) will the named plaintiff and his counsel prosecute the action vigorously on behalf of the

class? Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-1188 (10th Cir.2002). Thus, adequacy factors in potential conflicts of class counsel, and competency of class counsel. *Id.*, citing Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 626, n.20 (1997).

No conflicts of interests have been identified and none are apparent here. Defendants do not dispute the competence of the proposed class counsel, and counsel are experienced litigators in civil cases, including in class actions. Braver's own experience in litigating TCPA matters and his knowledge of the TCPA speak to his ability to vigorously advocate on behalf of the class. His understanding of many of the technical aspects of this case, as was plainly evident at the hearing, is impressive. Furthermore, like every other class member, plaintiff has a claim for statutory damages and injunctive relief under the TCPA. *See*, 47 U.S.C. § 227(b)(3) (providing "$500 in damages for each such violation," injunctive relief, or both). These common interests support plaintiff's adequacy in this case.[15]

Defendants speculate that members of the class may not wish to pursue injunctive relief under the TCPA and would have a conflict with Braver, who stated in his deposition that injunctive relief was "not negotiable." This speculation does not create a conflict of interest or render Braver an inadequate class representative. An alleged conflict must be more than merely speculative or hypothetical; there must be a showing that the conflict is a real probability. *See, e.g.*, Robertson v. National Basketball Ass'n, 389 F. Supp. 867, 899 (S.D.N.Y.1975) (class action determination would not be denied absent a showing that the alleged potential conflicts were real

---

[15] There is a relationship between typicality and adequacy requirements. *See, e.g.*, Meyers v. Southwestern Bell Telephone Co., 181 F.R.D. 499, 501 (W.D. Okla. 1997) (typicality and adequacy are interrelated; if the representative claims are not typical of the class, they cannot adequately protect the interests of the absent class members).

probabilities and not "mere imaginative speculation"). Furthermore, the election of statutory damages and injunctive relief as remedies by Braver would benefit the members of the class. The interests of Braver align with the interests of the class; their interests are not antagonistic to each other.

Defendants argue that Braver is inadequate because he "will place his own interests above the class's and even abandon class claims altogether, if it suits his purposes." The evidence indicates otherwise. For example, defendants offered Braver a substantial sum of money to dismiss his claims in this case and abandon the class, which he rejected. Doc. no. 67, TR at 36. The court concludes that Braver can be relied upon to see to it that the interests of the class come first and that, for instance, if the case is to be settled, it is settled on a basis that provides substantial relief to his fellow class members (commensurate with the merits as they may appear at that juncture), rather than a pittance for the class members and a windfall for class counsel.

Defendants also argue that Braver has made a business of pursuing TCPA claims and has made money pursuing claims and lawsuits. Defendants argue that Braver chose to have his number removed from the national do not call registry years ago, so that Braver "chooses to receive telemarketing calls." Doc. no. 57, p. 11. The fact that Braver has previously pursued TCPA claims and lawsuits is not disqualifying. If defendants' argument regarding the do not call registry is intended to suggest that Braver consented to the calls so that he is disqualified, the court rejects that argument; taking one's name off the national do not call registry is not the same thing as consent.

Braver is a fair and adequate representative for the proposed class. The adequacy requirement of Rule 23(a)(4) is satisfied.

16

### D. Fed.R.Civ.P. 23(b)(3) Requirements

#### 1. Predominance

The predominance requirement is similar to but far more demanding than the commonality requirement of Rule 23(a). Amchem Products, 521 U.S. 591, 623-24. While commonality requires the presence of common questions of law and fact, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, 521 U. S. 591, 623.   In other words, the inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id. For the predominance requirement to be met, plaintiff's claims must stem from a "common nucleus of operative facts" and not have "material variations in elements." See, Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968); Edgington v. R. G. Dickinson and Co., 139 F.R.D. 183, 191 (D. Kan. 1991).

The elements of the TCPA claim in issue here are the initiation of (1) telemarketing calls (2) to any residential telephone line (3) using an artificial or prerecorded voice to deliver a message.   47 U.S.C. § 227(b)(1)(B); 47 C.F.R. §64.1200(a)(3).  Class-wide evidence will determine each of these elements. For example, common evidence will show the purpose of the calls; a common legal question will be whether the purpose of the calls qualifies as telemarketing. See, 47

17

C.F.R. § 64.1200(f)(12) (definition of telemarketing). Similarly, common evidence is credibly predicted to show that every class member received a call using a soundboard voice. *See*, doc. no. 67, TR. at 84:14 – 91:2 (Robert Biggerstaff). A common question will be whether this qualifies as a prerecorded message under the Act.

Defendants make various arguments in an attempt to show that the predominance requirement has not been met. Below, the court addresses some of these arguments, all of which are rejected.

Defendants argue that class-wide evidence cannot identify calls that include live human voices; however, the fact that some calls may have included live voices, at some stage, does not defeat any of the elements of the claim.

Defendants argue that class-wide evidence cannot prove who was on the line during each call; however, the subscriber has statutory standing under the TCPA to bring a claim for calls made to that number regardless of whether he personally answered the call. As stated in Maraan v. DISH Network, L.L.C., 2014 WL 6603233 at *5 (S.D. Ohio 2014): "That Dr. Maraan did not answer the calls does not rob him of standing in this Court's view. He subscribed to a cellular telephone service on behalf of himself and other family members, a fairly typical and provider-encouraged scenario, and that status alone permits him to bring suit under the TCPA."[16] Arguments about who answered the phone do not defeat the predominance requirement.

Defendants argue that class-wide evidence cannot prove that the residential line requirement is met; however, common evidence shows that defendants intended

---

[16] Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316 (3d Cir. 2015), does not hold otherwise. That decision addressed whether other residents (*i.e.* non-subscribers) have standing. It held that even non-subscribers who reside within the household fall within the zone of interests of the act. *Id.* at 325-27.

to call, and did call, residential telephone numbers. Northstar is in the business of providing "security and home automation systems to home owners across most of the country." Doc. no. 69-1 at 23:9-11. It was for that reason that Northstar purchased a marketing list from Red Dot Data "for homeowners specifically," containing their landline telephone numbers. Doc. no. 42-4 at 18:2 -- 19:16; 25:2-6.[17] Arguments about Braver's phone number as it appeared in a Chamber of Commerce business listing are of negligible relevance here.

Defendants also argue that the issue of Northstar's vicarious liability for the calls requires individual inquiries into the belief of each class member with respect to whether Yodel was an agent of Northstar. The question of actual authority, however, depends upon the relationship and conduct between the defendants and requires no evidence from any consumer. Krakauer v. Dish Network L.L.C., 311 F.R.D. 384, 395 (M.D. N. Car. 2015). Thus, it is an issue which depends upon class-wide evidence. If plaintiff presents evidence sufficient for a jury to find actual authority, then any alleged individual issues regarding apparent authority or ratification will not predominate, as "it will not be necessary to reach apparent authority or ratification if [Plaintiff] and the class prevail on an actual authority theory." Id. at 396.

Furthermore, vicarious liability under theories of apparent authority and ratification are also subject to class-wide proof. Ratification depends on defendants' post-message behavior without concern for any conduct by the class members. Kristensen v. Credit Payment Servs., 12 F.Supp.3d 1292, 1306 (D. Nev. 2014); *see*

---

[17] Defendants argue that there is no list called the "Red Dot Data marketing list," the list referred to in the proposed class descriptions. However, as explained in the deposition testimony cited in the accompanying text (doc. no. 42-4 at p.18), a marketing list was compiled by Yodel from Flex Marketing Group, LLC, and Red Dot Data, LLC. *And see*, Kristensen v. Credit Payment Services, 12 F. Supp.3d 1292, 1303 (D. Nev. 2014) ("Data from T-Mobile calling lists can be used to identify the individual class members.").

*also*, Valle v. Global Exch. Vacation Club, 320 F.R.D. 50, 61 (C.D. Cal. 2017) (holding individual ratification issues do not predominate because "common question is whether Defendants ratified [] conduct by accepting customers [] sent to [it]"). Similarly, apparent authority depends on whether a reasonable person would believe that the caller had authority to act on behalf of Northstar. Kristensen, 12 F.Supp.3d at 1306. Because the inquiry is limited to how a reasonable person would perceive the calls at issue, there is no need to determine how individual class members perceived the calls. *See also*, Hawk Valley, Inc. v. Taylor, 301 F.R.D. 169, 188 (E.D. Pa. 2014) (certifying TCPA class and rejecting argument that individual issues regarding vicarious liability predominated).

As explained below, the court also rejects defendants' argument that individualized consent issues defeat the predominance requirement or otherwise defeat certification of a class.

Prior express written consent to the calls in question constitutes an affirmative defense. 47 U.S.C. §227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3); Van Patten v. Vertical Fitness Group, 847 F.3d 1037, 1044 (9th Cir. 2017); Gupta v. E*Trade Bank, 2013 WL 12155220 at *2 (D. N. Mex. 2013) (citing a 2011 Ninth Circuit opinion, unpublished, and Breslow v. Wells Fargo Bank, N.A., 857 F. Supp.2d 1316, 1319 (S.D. Fla. 2012). Thus, these arguments go to a defense, not to an element of plaintiff's claim alleged in count one.

Furthermore, consent may be a common question in cases, such as this one, in which evidence shows defendants had no prior relationship with class members and that defendants purchased their telephone numbers from a third party. *See*, Gene v. Gene LLC v. BioPay LLC, 541 F.3d 318, 328 (5th Cir. 2008) ("whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements" was a common question and "there were therefore no questions of individual consent."); Hinman v. M & M Rental Ctr., 545

F.Supp.2d 802, 807 (N.D. Ill. 2008) ("M and M's fax broadcasts were transmitted *en masse* based on the 'leads' list compiled several years earlier.   Under the circumstances, the question of consent may rightly be understood as a common question. . . .   The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.").

In any event, defendants, to date, have presented no evidence of any written consent, making such a defense speculative (to be charitable about it).[18]   Such a speculative defense does not defeat predominance.   *See*, Del Valle v. Global Exchange Vacation Club, 320 F.R.D. 50, 61 (C.D.Cal., 2017) ("Defendants' speculation that customers may have given their consent to receive telemarketing calls  . . . is not sufficient to defeat class certification -- especially where Plaintiff has offered persuasive evidence that [defendants do] not obtain express consent before cellular phone numbers are called by Defendants' vendors on their behalf." ); Booth v. Appstack, Inc., 2015 WL 1466247, at *10–12 (W.D.Wash. 2015) ("in the absence of any affirmative evidence of consent, consent is a common issue with a common answer," citation omitted).

The court concludes that while it is conceivable consent issues might require determination separate from class-wide issues at a later stage, common issues (including common issues related to consent)[19] plainly predominate.

The predominance requirement is satisfied.

---

[18] There was deposition testimony that Yodel told NorthStar the people called had "given consent" but that NorthStar did not inquire as to whether the people called had given their express written consent, signed, and expressly stating that they were consenting to receive prerecorded calls.   Doc. no. 42-3, p. 171.

[19] For example, to the extent that a standardized consent document is ever identified, whether it meets the disclosure standard of 47 C.F.R. § 64.1200(f)(8) will be a common question.

21

## 2. Superiority

The superiority requirement of Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The "class action device is frequently superior where proceeding individually would be difficult for class members with small claims." Belote v. Rivet Software, Inc., 2013 WL 2317243, *4 (D. Colo. 2013), paraphrasing Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010). See, Mims v. Arrow Financial Services, LLC, 565 U.S. 368, 386 (2012) (recognizing that plaintiffs are unlikely to pay a $350 filing fee[20] to advance an individual TCPA claim for $500). A class action avoids this problem by aggregating what would otherwise be a series of "too small" potential individual recoveries. See, In re Checking Acct. Overdraft Litig., 286 F.R.D. 645, 659 (S.D. Fla. 2012) ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.")

The court also notes that, as a general proposition, class relief is potentially available for all claims, including minimum statutory damage claims, assuming there is no clear expression of congressional intent to exempt the claims from Rule 23. See, Califano v. Yamasaki, 442 U.S. 682, 700 (1979) ("[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the [Federal] Rules [of Civil Procedure] established for that purpose, class relief is appropriate in civil actions brought in federal court...."). There is no express restriction of class relief with respect to claims under the TCPA. In addition, there is no incentive for suit created by any fee-shifting provision under the TCPA.

---

[20] The current filing fee in this court is $400.00.

22

Defendants argue that Braver's own past success in bringing individual claims indicates that class treatment is not superior. The court rejects this argument.

The circumstances of this action include: standardized conduct by the defendants, impacting numerous consumers who are geographically dispersed; a potential recovery by an individual consumer which is most likely too small to justify bringing an individual action; and evidence which indicates that defendants took steps to conceal their identity from the persons called, making it difficult for consumers to obtain the type of information that would permit them to pursue individual remedies. Given these circumstances, class action certification enables consumers to obtain a financial recovery (if legally and factually warranted) they might not have otherwise pursued on their own behalf, or which they might have been unable to pursue on their own behalf. At this juncture, the court does not perceive any insurmountable difficulties in managing a class action. For example, compliance with the notice requirements of Rule 23 should not pose a problem as defendants have records identifying the numbers called.

Class treatment will provide the fairest and most efficient adjudication of the alleged violations of the TCPA. The superiority requirement of Rule 23(b)(3) is satisfied.

### E. The Class Definitions: Ascertainability

Although not enumerated in Rule 23, some courts require that a class definition be "precise, objective, and presently ascertainable." Lavigne v. First Community Bancshares, Inc., 2018 WL 2694457, *6 (D. N.Mex. June 5, 2018) (certifying TCPA class).

The Tenth Circuit has not spoken on this requirement and several circuits have rejected it. See, City Select Auto Sales, Inc. v. BMW Bank of North America, Inc., 867 F.3d 434, 443 (3d Cir. 2017) (concurring opinion notes that the Second, Sixth, Seventh and Ninth Circuits have rejected this requirement and argues that the Third

23

Circuit should do so as well; in <u>City Select</u>, the majority reversed the district court's denial of certification). Nevertheless, district courts within this circuit have applied a standard of ascertainability which requires: first, that the class be defined with reference to objective criteria; and second, a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *See, e.g.*, <u>In re: Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litigation</u>, 2014 WL 104964, *2 (W.D. Okla. Jan. 9, 2014), citing <u>Hayes v. Wal-Mart Stores, Inc.</u>, 725 F.3d 349, 355 (3d Cir. 2013).

Here, the proposed class definitions are precise and objective. Phone numbers, names, and addresses of class members appear in the documents of Red Dot Data. The ascertainability requirement is generally satisfied where such business records can be used to identify the class. *See e.g.*, <u>AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.</u>, 321 F.R.D. 677, 684 (M.D. Fla. 2017) ("Defendants' records, data, and electronic systems . . . satisfy the objective criteria necessary to ascertain the class members. . . . The inquiry does not require a highly individualized assessment of the insureds because [certain information] . . . is readily accessible from Defendants' files.").

A list of telephone numbers that fall within the class definition satisfies the ascertainability requirement, and here there is additional contact information on top of that, available in the data. *See*, <u>Sandusky Wellness Center, LLC v. Medtox Sci., Inc.</u>, 821 F.3d 992, 997 (8th Cir. 2016) (finding, in a TCPA case, that "fax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable"); <u>American Copper & Brass v. Lake City Industrial Products, Inc.</u>, 757 F.3d 540 (6th Cir. 2014) ("the fax numbers are objective data satisfying the ascertainability requirement."); <u>Birchmeier v. Caribbean Cruise Line, Inc.</u>, 302 F.R.D. 240, 248 (N.D. Ill. 2014) ("it is fairly clear that the identities of the persons whose numbers are on plaintiffs' list of 930,000 -- indeed, the subscribers

for those numbers at the time defendants called them -- are sufficiently ascertainable"); Kristensen v. Credit Payment Services, 12 F.Supp.3d 1292, 1303 (D. Nev. 2014) ("Data from T-Mobile calling lists can be used to identify the individual class members. Prospective plaintiffs can readily identify themselves as class members based on receipt of the text message."); Palm Beach Golf Center-Boca, Inc. v. Sarris, 311 F.R.D. 688, 692, 694  (S.D. Fla. 2015) (report indicated there was an error-free transmission of a one-page fax to 7,058 unique fax numbers on certain dates; court stated, "The proposed class definition here is similar to those approved by numerous courts in other B2B TCPA class actions.  The majority of courts to consider the issue have concluded that such a definition, supported by a report like the Biggerstaff report prepared for this case, satisfies Rule 23's implicit ascertainability and administrative feasibility requirement.").

Defendants argue that a class is not sufficiently definite if it includes persons who have no claim because, for example, no prerecorded message was played in certain situations, making it necessary to listen to each of the calls to identify proper class members.  Defendants argue it would not be administratively feasible to identify class members by this method, which means that the class is not sufficiently ascertainable.  Defendants have offered no evidence to show that the proposed class includes individuals to whom no prerecorded message was played, and plaintiff's proposed class and evidence makes such situations extremely unlikely.  For example, the length of the call which is used to define the proposed class (calls lasting 30 seconds) would eliminate situations in which a called person hung up before the prerecorded message was played.  Furthermore, if it should prove necessary, these types of concerns could be addressed by a claims procedure after the major, common issues are determined on a class-wide basis.

Defendants argue that ascertainability has not been shown because there may be some class members who have no claim because they did not personally answer

the phone when their number was dialed.  The court rejects this contention because, as previously explained, the subscriber to a particular phone number has standing without regard to whether he answered the call in question.

Defendants also argue that ascertainability concerns are raised because the class is an improperly defined "fail safe" class.  Defendants cite <u>Taylor v. Universal Auto Group I, Inc.</u>, 2014 WL 6654270, at *22 (W.D.Wash.,2014) (inclusion of the "without prior consent" language in the national classes definition makes it a fail safe class; rather than deny certification, court provided plaintiff with an opportunity to refine the class definition).  The class definitions proposed by the plaintiff are not defined in terms of consent, and there is no fail safe problem.

Ascertainability requirements are satisfied.

## IV.  <u>Class Certification</u>

After careful consideration, the court finds and concludes that plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b)(3).  This case is well-suited to adjudication under Rule 23.  Plaintiff's motion for class certification is, accordingly, **GRANTED**.  Doc. no. 42.

As proposed by the plaintiff, the following class and subclass are **CERTIFIED** with respect to count one of the first amended complaint.

> <u>Class:</u>
> All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 20 or 50 to the call, and that resulted in the normal clearing disposition.

> <u>Subclass:</u>
> All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 50 to the call, and that resulted in the normal clearing disposition.

Excluded from the class are:

Any persons whose contact information is associated with either an IP address or website URL in the Red Dot Data marketing list.

## V.  Schedule

The parties are **DIRECTED** to confer with a view to filing a jointly proposed schedule which addresses the timing of notice to the class, as well as the timing of any pre-trial motions or other pre-trial matters that will require the court to rule.  The jointly proposed schedule **SHALL** also inform the court of plaintiff's position regarding the status of count three of the first amended complaint.  The jointly proposed schedule is **DUE** within thirty days of the date of this order.  After review of the jointly proposed schedule, the court will determine whether it is necessary to hold another scheduling conference at this stage.  If the parties are unable to agree on a jointly proposed schedule, they shall so notify the court within thirty-one days of the date of this order.

IT IS SO ORDERED this 15th day of October, 2018.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

17-0383p014 rev.docx

MARTIN,MIDP,PROTO

# United States District Court
# Northern District of Illinois - CM/ECF LIVE, Ver 6.2.2 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:17-cv-08841

| | |
|---|---|
| Florence Mussat, M.D., S.C v. IQVIA Holdings, Inc. et al | Date Filed: 12/08/2017 |
| Assigned to: Honorable Virginia M. Kendall | Jury Demand: Defendant |
| Cause: 28:1331 Federal Question | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

### Plaintiff

**Florence Mussat, M.D., S.C.**
*on behalf of plaintiff and class members*
*defined herein*

represented by **Cathleen M. Combs**
Edelman, Combs, Latturner & Goodwin LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: ccombs@edcombs.com
*ATTORNEY TO BE NOTICED*

**Curtis Charles Warner**
Warner Law Firm, LLC
350 S. Northwest HWY, Ste. 300
Park Ridge, IL 60068
(847) 701-5290
Email: cwarner@warnerlawllc.com
*ATTORNEY TO BE NOTICED*

**Heather A. Kolbus**
Edelman, Combs, Latturner & Goodwin, LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: hkolbus@edcombs.com
*ATTORNEY TO BE NOTICED*

**James O. Latturner**
Edelman, Combs, Latturner & Goodwin LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: jlatturner@edcombs.com

*ATTORNEY TO BE NOTICED*

**Daniel A. Edelman**
Edelman, Combs, Latturner & Goodwin
LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: courtecl@edcombs.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**IQVIA Holdings, Inc.**
*TERMINATED: 02/27/2018*

**Defendant**

**John Does 1-10**

**Defendant**

**IQVIA, Inc.**                   represented by   **Edward C. Eberspacher , IV**
Meyer Law Group LLC
30 North LaSalle Street
Suite 1410
Chicago, IL 60602
312-265-0565
Email: teberspacher@meyerlex.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/08/2017 | 1 | COMPLAINT filed by FLORENCE MUSSAT, M.D., S.C.; Filing fee $ 400, receipt number 0752-13885378. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Edelman, Daniel) (Entered: 12/08/2017) |
| 12/08/2017 | 2 | CIVIL Cover Sheet (Edelman, Daniel) (Entered: 12/08/2017) |
| 12/08/2017 | 3 | ATTORNEY Appearance for Plaintiff FLORENCE MUSSAT, M.D., S.C. by Daniel A. Edelman (Edelman, Daniel) (Entered: 12/08/2017) |
| 12/08/2017 | 4 | ATTORNEY Appearance for Plaintiff FLORENCE MUSSAT, M.D., S.C. by Cathleen M. Combs (Combs, Cathleen) (Entered: 12/08/2017) |
| 12/08/2017 | 5 | ATTORNEY Appearance for Plaintiff FLORENCE MUSSAT, M.D., S.C. by James O. Latturner (Latturner, James) (Entered: 12/08/2017) |
| 12/08/2017 | 6 | ATTORNEY Appearance for Plaintiff FLORENCE MUSSAT, M.D., S.C. by Heather A. Kolbus (Kolbus, Heather) (Entered: 12/08/2017) |

| 12/08/2017 | | CASE ASSIGNED to the Honorable Virginia M. Kendall. Designated as Magistrate Judge the Honorable Daniel G. Martin. (cc, ) (Entered: 12/08/2017) |
|---|---|---|
| 12/08/2017 | 7 | Plaintiff's Fed. R. Civ. P. 7.1 Disclosure STATEMENT by FLORENCE MUSSAT, M.D., S.C. (Kolbus, Heather) (Entered: 12/08/2017) |
| 12/08/2017 | 8 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by FLORENCE MUSSAT, M.D., S.C. (Kolbus, Heather) (Entered: 12/08/2017) |
| 12/08/2017 | | SUMMONS Issued as to Defendant IQVIA Holdings, Inc. (pg, ) (Entered: 12/08/2017) |
| 12/08/2017 | | SUMMONS Issued as to Defendant IQVIA Holdings, Inc. (jp, ) (Entered: 12/08/2017) |
| 12/08/2017 | 9 | ATTORNEY Appearance for Plaintiff FLORENCE MUSSAT, M.D., S.C. by Curtis Charles Warner (Warner, Curtis) (Entered: 12/08/2017) |
| 12/11/2017 | 10 | MINUTE entry before the Honorable Virginia M. Kendall. Initial status hearing set for 3/12/2018 at 9:00 a.m. Joint Status Report due by 3/8/2018. The parties are directed to Judge Kendall's web page found at www.ilnd.uscourts.gov for information about the Initial Status Report and for information regarding all standing orders for cases on Judge Kendall's docket. The parties shall follow all of the standing orders for Judge Kendall and all Local Rules which can be found at the same web page. For the Initial Status Report, the parties are to report on the following: (1) Possibility of settlement in the case; (2) if no possibility of settlement exists, the nature and length of discovery necessary (with specific dates) to get the case ready for trial; 3) whether the parties jointly consent to proceed before the Magistrate Judge. Prior to the Initial Status Hearing, the Parties are to exchange initial disclosures (Fed. R. Civ. P. 26(a)(1)). At the Initial Status Hearing, the Parties shall be prepared to inform the Court about the extent of monetary damages in order for the Court to address the proportionality of discovery as required by Fed. R. Civ. P. 26. Lead counsel is directed to appear at this status hearing. Mailed notice (lk, ) (Entered: 12/11/2017) |
| 12/11/2017 | 11 | NOTICE TO THE PARTIES - The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in the attached Notice which includes the MIDP Standing Order. Also attached is a checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the attached documents (Notice to Parties and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third-Party Complaint is served. (cc, ) (Entered: 12/11/2017) |
| 12/21/2017 | 12 | WAIVER OF SERVICE returned executed by Florence Mussat, M.D., S.C.. IQVIA Holdings, Inc. waiver sent on 12/19/2017, answer due 2/20/2018. (Kolbus, Heather) (Entered: 12/21/2017) |
| 02/13/2018 | 13 | Plaintiff's Motion for Leave to File an Amended Complaint and to Extend Dates by Florence Mussat, M.D., S.C. (Attachments: # 1 Appendix A)(Edelman, Daniel) (Entered: 02/13/2018) |
| 02/13/2018 | 14 | *Plaintiff's Motion for Leave to File an Amended Complaint and to Extend Dates* NOTICE of Motion by Daniel A. Edelman for presentment of before Honorable Virginia M. Kendall on 2/27/2018 at 09:00 AM. (Edelman, Daniel) (Entered: 02/13/2018) |

| 02/27/2018 | 15 | AMENDED complaint by Florence Mussat, M.D., S.C. against IQVIA, Inc. and terminating IQVIA Holdings, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Edelman, Daniel) (Entered: 02/27/2018) |
| 02/27/2018 | 16 | MINUTE entry before the Honorable Virginia M. Kendall. Motion hearing held on 2/27/2018. Plaintiff's Unopposed Motion for leave to file an amended Complaint and to extend dates 13 is granted. Dispositive Motions with supporting memoranda shall be filed on or before 3/14/2018. Response due by 3/28/2018. Reply due by 4/4/2018. Status hearing set for 5/23/2018 at 9:00 AM. Mailed notice (lk, ) (Entered: 02/28/2018) |
| 03/01/2018 | | SUMMONS Issued as to Defendant IQVIA, Inc. (pg, ) (Entered: 03/01/2018) |
| 03/02/2018 | 17 | MINUTE entry before the Honorable Virginia M. Kendall. Status hearing set for 3/12/2018 is stricken. Mailed notice (lk, ) (Entered: 03/02/2018) |
| 03/07/2018 | 18 | WAIVER OF SERVICE returned executed by Florence Mussat, M.D., S.C.. IQVIA, Inc. waiver sent on 3/1/2018, answer due 4/30/2018. (Kolbus, Heather) (Entered: 03/07/2018) |
| 03/14/2018 | 19 | ATTORNEY Appearance for Defendant IQVIA, Inc. by Edward C. Eberspacher, IV (Eberspacher, Edward) (Entered: 03/14/2018) |
| 03/14/2018 | 20 | JURY Demand (Eberspacher, Edward) (Entered: 03/14/2018) |
| 03/14/2018 | 21 | DISCLOSURE STATEMENT by IQVIA, Inc. (Eberspacher, Edward) (Entered: 03/14/2018) |
| 03/14/2018 | 22 | LOCAL RULE 3.2 STATEMENT by IQVIA, Inc. (Eberspacher, Edward) (Entered: 03/14/2018) |
| 03/14/2018 | 23 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant IQVIA, Inc. (Eberspacher, Edward) (Entered: 03/14/2018) |
| 03/14/2018 | 24 | MEMORANDUM by IQVIA, Inc. in support of Motion to Dismiss for Failure to State a Claim 23 (Eberspacher, Edward) (Entered: 03/14/2018) |
| 03/14/2018 | 25 | ANSWER to amended complaint by IQVIA, Inc.(Eberspacher, Edward) (Entered: 03/14/2018) |
| 03/21/2018 | 26 | AMENDED Answer by IQVIA, Inc. to amended complaint 15 (Eberspacher, Edward) (Entered: 03/21/2018) |
| 03/28/2018 | 27 | RESPONSE by Florence Mussat, M.D., S.C.in Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant IQVIA, Inc. 23 *Plaintiff's Response in Opposition to Defendant's Motion to Dismiss* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Kolbus, Heather) (Entered: 03/28/2018) |
| 03/29/2018 | 28 | MOTION by Defendant IQVIA, Inc. for extension of time to file response/reply as to response in opposition to motion, 27 *AGREED MOTION* (Eberspacher, Edward) (Entered: 03/29/2018) |
| 03/29/2018 | 29 | NOTICE of Motion by Edward C. Eberspacher, IV for presentment of motion for extension of time to file response/reply 28 before Honorable Virginia M. Kendall on 4/4/2018 at 09:00 AM. (Eberspacher, Edward) (Entered: 03/29/2018) |

| | | |
|---|---|---|
| 04/03/2018 | 30 | MINUTE entry before the Honorable Virginia M. Kendall. Defendant's Agreed Motion Motion for extension of time to file reply 28 regarding Motion to Dismiss 23 is granted. Reply due by 4/11/2018. Motion hearing set for 4/4/2018 is stricken. Status hearing set for 5/23/2018 at 9:00 AM stands. Mailed notice (lk, ) (Entered: 04/03/2018) |
| 04/11/2018 | 31 | REPLY by IQVIA, Inc. to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant IQVIA, Inc. 23 (Attachments: # 1 Exhibit 1)(Eberspacher, Edward) (Entered: 04/11/2018) |
| 04/11/2018 | 32 | MOTION by Plaintiff Florence Mussat, M.D., S.C. for protective order *Joint Motion for Entry of a Confidentiality Order* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Kolbus, Heather) (Entered: 04/11/2018) |
| 04/11/2018 | 33 | NOTICE of Motion by Heather A. Kolbus for presentment of motion for protective order 32 before Honorable Virginia M. Kendall on 4/17/2018 at 09:00 AM. (Kolbus, Heather) (Entered: 04/11/2018) |
| 04/13/2018 | 34 | NOTICE of Service of Responses to Mandatory Initial Discovery (MIDP) , filed by Defendant IQVIA, Inc.. (Eberspacher, Edward) (Entered: 04/13/2018) |
| 04/13/2018 | 35 | NOTICE of Service of Responses to Mandatory Initial Discovery (MIDP) , filed by Plaintiff Florence Mussat, M.D., S.C.. (Warner, Curtis) (Entered: 04/13/2018) |
| 04/16/2018 | 36 | AGREED Confidentiality Order signed by the Honorable Virginia M. Kendall on 4/16/2018. Motion hearing set for 4/17/2018 is stricken. Mailed notice(lk, ) (Entered: 04/16/2018) |
| 05/17/2018 | 37 | STATUS Report *Joint Initial Status Report* by Florence Mussat, M.D., S.C. (Kolbus, Heather) (Entered: 05/17/2018) |
| 05/21/2018 | 38 | MINUTE entry before the Honorable Virginia M. Kendall. On the Court's own motion, Status hearing set for 5/23/2018 is reset for 6/5/2018 at 9:00 AM. Mailed notice (lk, ) (Entered: 05/21/2018) |
| 05/24/2018 | 39 | MOTION by Defendant IQVIA, Inc. to stay *Party Discovery* (Eberspacher, Edward) (Entered: 05/24/2018) |
| 05/24/2018 | 40 | NOTICE of Motion by Edward C. Eberspacher, IV for presentment of motion to stay 39 before Honorable Virginia M. Kendall on 6/5/2018 at 09:00 AM. (Eberspacher, Edward) (Entered: 05/24/2018) |
| 05/24/2018 | 41 | NOTICE by Florence Mussat, M.D., S.C. re response in opposition to motion, 27 *of Additional Authority* (Attachments: # 1 Appendix A)(Kolbus, Heather) (Entered: 05/24/2018) |
| 05/25/2018 | 42 | MINUTE entry before the Honorable Virginia M. Kendall. Defendant's Motion to stay Discovery pending resolution of Motion to Dismiss 39 is granted due to jurisdictional issue. Status hearing set for 6/5/2018 at 9:00 AM stands. Mailed notice (lk, ) (Entered: 05/25/2018) |
| 05/25/2018 | 43 | MOTION by Defendant IQVIA, Inc. for leave to file *Response to Plaintiff's Notice of Additional Authority* (Eberspacher, Edward) (Entered: 05/25/2018) |
| 05/25/2018 | 44 | NOTICE of Motion by Edward C. Eberspacher, IV for presentment of motion for leave to file 43 before Honorable Virginia M. Kendall on 5/30/2018 at 09:00 AM. (Eberspacher, Edward) (Entered: 05/25/2018) |

      

| | | |
|---|---|---|
| 05/29/2018 | 45 | MINUTE entry before the Honorable Virginia M. Kendall. Defendants' motion to deny the motion to present additional authority is denied as is the Defendants motion to file a more thorough response to the motion 43 . The response filed is sufficient and the Court accepts that response. A party is obligated to file additional authority as it is released and the Gerber case was issued ten days ago. As such, this was an appropriate and not untimely motion to make. Defendants have noted in their motion many of the reasons they believe it is inapplicable and the Court is perfectly capable of reading it and applying it to the facts of this case. No further briefing is necessary. Motion hearing set for 5/30/2018 is stricken. Mailed notice (lk, ) (Entered: 05/29/2018) |
| 06/05/2018 | 46 | MINUTE entry before the Honorable Virginia M. Kendall. Status hearing held on 6/5/2018. Defendant shall file 12(f) Motion by 7/18/2018. Response due by 8/15/2018. Reply due by 8/29/2018. Status hearing set for 10/17/2018 at 9:00 AM. Due to clerical error in Minute Entry 16 dated 2/27/2018, Defendant IQVIA Holdings Inc. was not dismissed without prejudice. Defendant IQVIA is dismissed without prejudice. Parties are ordered to propose a Discovery schedule. Mailed notice (lk, ) (Entered: 06/06/2018) |
| 06/06/2018 | 47 | ORDER signed by the Honorable Virginia M. Kendall on 6/6/2018. The Court denies IQVIA's Motion to Dismiss 23 . Mailed notice(lk, ) (Entered: 06/06/2018) |
| 06/27/2018 | 48 | AFFIDAVIT of Service filed by Plaintiff Florence Mussat, M.D., S.C. regarding Subpoena *Proof of Service for Subpoena Served* on 06/21/2018 (Kolbus, Heather) (Entered: 06/27/2018) |
| 07/18/2018 | 49 | MOTION by Defendant IQVIA, Inc. to strike *plaintiff's class definition asserting claims on behalf of non-Illinois residents* (Eberspacher, Edward) (Entered: 07/18/2018) |
| 07/18/2018 | 50 | MEMORANDUM by IQVIA, Inc. in support of motion to strike 49 *plaintiff's class definition asserting claims on behalf of non-Illinois residents* (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Eberspacher, Edward) (Entered: 07/18/2018) |
| 08/15/2018 | 51 | RESPONSE by Florence Mussat, M.D., S.C.in Opposition to MOTION by Defendant IQVIA, Inc. to strike *plaintiff's class definition asserting claims on behalf of non-Illinois residents* 49 *Plaintiff's Response in Opposition to Defendant's Motion to Strike Plaintiff's Class Definition Asserting Claims on Behalf of Non-Illinois Residents* (Kolbus, Heather) (Entered: 08/15/2018) |
| 08/17/2018 | 52 | MOTION by Defendant IQVIA, Inc. for extension of time to file response/reply (Eberspacher, Edward) (Entered: 08/17/2018) |
| 08/17/2018 | 53 | NOTICE of Motion by Edward C. Eberspacher, IV for presentment of motion for extension of time to file response/reply 52 before Honorable Virginia M. Kendall on 8/22/2018 at 09:00 AM. (Eberspacher, Edward) (Entered: 08/17/2018) |
| 08/20/2018 | 54 | MINUTE entry before the Honorable Virginia M. Kendall. Defendant's Agreed Motion for extension of time to file reply 52 regarding Motion to strike 49 is granted. Reply due by 9/5/2018. Motion hearing set for 8/22/2018 is stricken. Mailed notice (lk, ) (Entered: 08/20/2018) |
| 09/05/2018 | 55 | REPLY by IQVIA, Inc. to response in opposition to motion, 51 (Eberspacher, Edward) (Entered: 09/05/2018) |
| 10/02/2018 | 56 | MINUTE entry before the Honorable Virginia M. Kendall. On the Court's own Motion, Status hearing set for 10/17/2018 is reset for 11/15/2018 at 9:00 AM. Mailed notice (lk, ) (Entered: 10/02/2018) |

| 10/17/2018 | 57 | NOTICE of Service of Supplemental Mandatory Initial Discovery Responses (MIDP) , filed by Plaintiff Florence Mussat, M.D., S.C.. (Kolbus, Heather) (Entered: 10/17/2018) |
| 10/26/2018 | 58 | MEMORANDUM Opinion and Order Signed by the Honorable Virginia M. Kendall on 10/26/2018. the Court grants Defendant's Motion to Strike Plaintiff's Class Definition 51 . Mailed notice(lk, ) (Entered: 10/26/2018) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 11/07/2018 16:04:04 | | |
| PACER Login: | ap0000:3355484:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:17-cv-08841 |
| Billable Pages: | 5 | Cost: | 0.50 |